NICHOLAS WOOD *v.* CITY OF BRIDGEPORT ET AL.
(14011)

SHEA, CALLAHAN, GLASS, COVELLO and HULL, Js.

Argued October 5—decision released December 11, 1990

*Geoffrey L. Squitiero,* with whom was *James J. Maher,* for the appellant (defendant Citytrust Company).

*William J. Curran,* for the appellee (plaintiff).

SHEA, J. In this action for damages for personal injuries suffered by the plaintiff, Nicholas Wood, when he fell upon an icy sidewalk in front of a building on Main Street in Bridgeport, owned and occupied by the defendant, Citytrust Company,[1] the plaintiff was awarded $400,000 by a jury. The defendant has appealed from the judgment rendered on the verdict claiming that the trial court erroneously permitted the plaintiff: (1) to reopen his case for the purpose of presenting additional testimony concerning the exact location of his fall after both parties had rested; and (2) to suggest a specific figure as an appropriate award of damages. The defendant also claims that the verdict was excessive and that its motion for a remittitur should have been granted. We affirm the judgment.

## I

After the plaintiff had rested his case, the defendant, without presenting any evidence, also rested and moved for a directed verdict. One of the grounds for the motion was that the evidence was insufficient to

---

[1] The original complaint included, in addition to the count directed against the defendant Citytrust Company, a count against the city of Bridgeport for failure to maintain properly the public sidewalk. The plaintiff withdrew the count against the city before trial began. We will hereinafter refer to Citytrust Company as the defendant.

establish whether the plaintiff had fallen on the portion of the sidewalk within the defendant's property line or on the public portion under the control of the city of Bridgeport. Before the trial court ruled on the motion, the plaintiff moved to reopen his case in order to present further testimony regarding the location of his fall. Over the defendant's objection, the court granted the motion to reopen, indicating that the defendant also would be permitted to reopen its case to present additional evidence. Initially the court indicated that it would defer ruling on the motion for a directed verdict until after the plaintiff's new evidence had been received, but, when the defendant objected to such delay, that motion was denied, the court having decided there was sufficient evidence for the case to go to the jury.

"In any ordinary situation if a trial court feels that, by inadvertence or mistake, there has been a failure to introduce available evidence upon a material issue in the case of such a nature that in its absence there is a serious danger of a miscarriage of justice, it may properly permit that evidence to be introduced at any time before the case has been decided." *Hauser* v. *Fairfield,* 126 Conn. 240, 242, 10 A.2d 689 (1940). "Whether or not a trial court will permit further evidence to be offered after the close of testimony in a case is a matter resting in the sound discretion of the court." *Toffolon* v. *Avon,* 173 Conn. 525, 537, 378 A.2d 580 (1977); see *King* v. *Spencer,* 115 Conn. 201, 203, 161 A. 103 (1932). Such a reopening should not be permitted if it would result in substantial prejudice to a party. See *Poly-Pak Corporation of America* v. *Barrett,* 1 Conn. App. 99, 104, 468 A.2d 1260 (1983).

We have held that such prejudice has occurred when the state was allowed to introduce further testimony in order to cure its failure to introduce, during its case-in-chief, any evidence upon an essential element of the

crime charged, a deficiency called to its attention by the defendant's motion for a directed judgment of acquittal. *State* v. *Allen,* 205 Conn. 370, 533 A.2d 559 (1987). In *Allen,* we recognized that the motion for acquittal at the close of the state's evidence authorized by Practice Book § 883 might become a "dead letter" if such a motion were to result in affording the state another opportunity to furnish evidence essential to prove an element of the crime that had been omitted from its case-in-chief. Id., 379. A similar concern is implicated in civil cases when a motion for a directed verdict is made pursuant to Practice Book § 321. The moving party is entitled to have such a motion decided upon the basis of the evidence that has been presented at the time of the motion.

In the case before us, however, the defendant does not claim on appeal that it was entitled to a directed verdict for failure of the plaintiff to present a prima facie case before the motion was made. It is also clear that the trial court did not rely on the additional evidence of the plaintiff in ruling on the defendant's motion, which was denied before that evidence was presented. Indeed, the defendant argues that the denial of its motion indicates that the court was satisfied that a prima facie case had been proved and, accordingly, there was no need to allow further testimony.

The only question asked of the plaintiff after the court had ruled that his case could be reopened pertained to how far he was from a path cut in the icy sidewalk in front of the defendant's building when he slipped and fell, to which he responded, "Two feet." He had previously testified that he was walking south on the twelve inch wide path through the ice, which was six inches from the building line, when he stepped two feet to the left of the path to allow some women walking north on the path to pass. After walking two or three more

steps south on the uncleared portion of the sidewalk, he slipped and fell as he started to get back onto the path from which the ice had been cleared. This testimony, like that he gave after his case was reopened, placed the plaintiff's fall within the defendant's property line, thus rendering his later testimony superfluous.

We agree with the defendant that it was not essential for the purpose of establishing a prima facie case to present additional testimony of the plaintiff about the location of his fall. Unfortunately, however, during the argument on the motion for a directed verdict, neither the court nor counsel for the parties could recall precisely the plaintiff's initial testimony concerning where he had fallen. The defendant repeatedly insisted that there was no testimony indicating where the plaintiff had fallen in relation to the property line. Under these circumstances, we conclude that the court was well within its discretion in permitting additional testimony to clarify the location of the plaintiff's fall.

## II

In its second claim of error, the defendant attempts to raise the significant issue of the constitutionality of Public Acts 1989, No. 89-319,[2] which permits counsel "to specifically articulate to the trier of fact during clos-

[2] Public Acts 1989, No. 89-319, which became effective on October 1, 1989, provides as follows "(a) In any civil action to recover damages resulting from personal injury or wrongful death, counsel for any party to the action shall be entitled to specifically articulate to the trier of fact during closing arguments, in lump sums or by mathematical formulae, the amount of past and future economic and noneconomic damages claimed to be recoverable.

"(b) Whenever, in a jury trial, specific monetary sums or mathematical formulae are articulated during closing arguments as provided for in subsection (a) of this section, the trial court shall instruct the jury that the sums or mathematical formulae articulated are not evidence but only arguments and that the determination of the amount of damages to be awarded, if any, is solely the jury's function."

ing arguments, in lump sums or by mathematical formulae, the amount of past and future economic and noneconomic damages claimed to be recoverable." Prior to this enactment, in *Carchidi* v. *Rodenhiser,* 209 Conn. 526, 551 A.2d 1249 (1989), and *Pool* v. *Bell,* 209 Conn. 536, 551 A.2d 1254 (1989), this court had disapproved such arguments. The defendant maintains that the public act, which overrules those decisions, trespasses upon the exclusive authority of the judicial branch of our state government over rules of practice and procedure. See *State* v. *Clemente,* 166 Conn. 501, 514–16, 353 A.2d 723 (1974).

The plaintiff maintains, however, that the defendant has effectively waived the issue of impropriety in the argument before the jury by failing to object thereto in the trial court and by failing to request that the arguments be recorded pursuant to General Statutes § 51-61 (a). "We have regarded the failure to request that arguments be recorded as a waiver and have frequently refused to consider claims of improper argument in the absence of a transcript or reconstruction thereof." *State* v. *Austin,* 195 Conn. 496, 504, 488 A.2d 1250 (1985).

The defendant concedes that the closing arguments were not recorded and also admits that it did not object at trial to the argument that is the basis of its claim for reversal. "The absence of any objection or exception to improper argument . . . has also been regarded as a waiver of the right to press such a claim of error." Id., 504–505. The defendant seeks review, nevertheless, on the theory that it has been deprived of a fundamental constitutional right and a fair trial, relying upon *State* v. *Evans,* 165 Conn. 61, 70, 327 A.2d 576 (1973), and *State* v. *Golding,* 213 Conn. 233, 239–40, 567 A.2d 823 (1989). This reliance is misplaced, however, because both these cases establish as a prerequisite to appellate review the adequacy of the record to

support the claim of error. The absence of a transcript of the argument at issue, which the defendant as the appellant is obliged to provide; Practice Book §§ 4013 (a) (3) and 4019 (a); defeats the defendant's claim that it is entitled to consideration of this constitutional issue.

### III

In claiming that the jury verdict of $400,000 was excessive, the defendant concedes that the jury could reasonably have found from the evidence that the plaintiff had sustained a fractured skull and an epidural hematoma in his fall. The resulting injuries to his brain have caused the plaintiff to be susceptible to epileptic seizures, two of which have occurred since the accident. The evidence indicated that he will be required to take dilantin, an anti-seizure medication, for the remainder of his life. The side effects of this medication have caused the plaintiff to experience memory loss and depression.

There was also evidence that the injury to his brain resulted in a mild decrease in the plaintiff's power to reason cognitively and to remember accurately. His intelligence quotient dropped about 9 percent. According to the plaintiff, who was fifty-three years old at the time of the acccident, his brain injury has affected his working ability by decreasing his efficiency and reducing the number of hours he can devote to his work. His fear of suffering a seizure while driving restricts his ability to travel in relation to his work.

It was stipulated that the mortality tables indicated that the plaintiff's life expectancy at the time of trial was 19.3 years. The plaintiff testified that he has lost $10,000 in earnings as a result of the accident. The jury could reasonably have found that his medical expenses at the time of trial were $7000.

"Assessment of damages is peculiarly within the province of the jury and their determination should be set aside only when the verdict is plainly excessive and exorbitant." *Wochek* v. *Foley*, 193 Conn. 582, 586, 477 A.2d 1015 (1984). "The only practical test to apply to a verdict is whether the award of damages falls somewhere within the necessarily uncertain limits of fair and reasonable compensation in the particular case, or whether the verdict so shocks the sense of justice as to compel the conclusion that the jury were influenced by partiality, mistake or corruption." *Slabinski* v. *Dix*, 138 Conn. 625, 629, 88 A.2d 115 (1952). "Evidence offered at trial relevant to damages must be reviewed in the light most favorable to sustaining the verdict." *Holbrook* v. *Casazza*, 204 Conn. 336, 360, 528 A.2d 774 (1987), cert. denied, 484 U.S. 1006, 108 S. Ct. 699, 98 L. Ed. 2d 651 (1988). The refusal of the trial court to set aside the verdict, as in this case, is a significant factor in deciding whether it was excessive. *Pisel* v. *Stamford Hospital*, 180 Conn. 314, 343, 430 A.2d 1 (1980); *Healy* v. *White*, 173 Conn. 438, 441, 378 A.2d 540 (1977).

The defendant does not quarrel with these familiar principles but maintains, nevertheless, that an award of $400,000, when the special damages proved were only $17,000, was excessive. Admittedly, the rules we have recited, when applied to a particular case, provide little precise guidance. It is more helpful to compare the verdict challenged with verdicts in similar cases when possible. In *Healy* v. *White*, supra, 440–41, this court upheld a verdict of $350,000 for a seven year old boy who was thrown from an automobile to the pavement after a collision with a truck. The child received some rib fractures and multiple contusions and abrasions, but the major consequence was a head injury claimed to have resulted in "minimal brain dysfunction and epilepsy" and to have aggravated a learning disa-

bility existing before the accident. A separate award of $60,000 was made to the boy's father for medical expenses and special education that would be needed in the future. Although that case differs from the present one in some respects, notably the relative ages of the injured plaintiffs, it does indicate that this court has not considered a very substantial award to be unreasonable when a permanent condition of epilepsy has been proved. The verdict in *Healy* of $350,000 for the consequences attending such a condition to a child is reasonably comparable to the allowance of $383,000[3] made to the fifty-three year old plaintiff in this case for a similar injury when inflation during the intervening period of thirteen years is taken into account. We conclude that the verdict was not excessive.

The judgment is affirmed.

In this opinion the other justices concurred.

---

[3] The verdict of $400,000 must be reduced by the special damages of $17,000 in order to determine the amount allowed by the jury for noneconomic losses. Because the accident occurred prior to October 1, 1987, General Statutes § 52-225d, which provides for separate findings with respect to economic damages and noneconomic damages, was inapplicable.