[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an action filed by Cynthia DiNardo and on behalf of her son Joseph Christian DiNardo for damages as a result of the alleged malpractice of the defendant Michael Lashgari, M.D.
The plaintiff, Cynthia DiNardo, was a patient of the defendant, Michael Lashgari, M.D., in that in May of 1984, the CT Page 1648 defendant accepted the plaintiff as a patient with respect to her pregnancy.
On November 15, 1990, the jury found the issues for the plaintiffs against the defendant and awarded Cynthia DiNardo damages in the amount of $500,000 and awarded her son, Joseph Christian DiNardo, damages in the amount of $25,000.
The sole issue before the court is the defendant's motion to set aside the verdict on the claimed grounds: 1) that it is contrary to the law; 2) that it is contrary to the evidence; and 3) it is excessive.
It is basic that litigants have a constitutional right to have a jury determine issue of fact. Bambus v. Bridgeport Gas Co., 148 Conn. 167. The amount of damages to be awarded is a determination for the jury to make. Szivos v. Leonard,113 Conn. 522. Therefore, in analyzing the propriety of an award, the court must move carefully as to whether or not it should intrude with the verdict of the jury. However, it is the court's obligation to set the verdict aside when it finds that manifest injustice is done and the verdict is palpably against the evidence. State v. Chin Lung, 106 Conn. 701.
The test that has been established to determine if a verdict should be set aside, ". . . is whether the award of damages falls somewhere within the necessarily uncertain limits of fair and reasonable compensation in the particular case, or whether the verdict so shocks the sense of justice as to compel the conclusion that the jury was influenced by partiality, mistake or corruption." Wood v. Bridgeport, 216 Conn. 604.
Determination of damages is within the provice of the jury and their determination should be set aside only when the verdict is plainly excessive and exorbitant. Wochek v. Foley,193 Conn. 582. The evidence at trial must be reviewed in the light most favorable to sustaining the verdict. Gorczyca v. New York, New Haven Hartford Railroad Co., 141 Conn. 701.
 II.
With these principles in mind, the court will look to the facts that the jury could have reasonably found in arriving at their verdict.
The plaintiff is 39 years of age, has a degree in anthropology and is married to Joseph DiNardo, a dentist. She has an 8 year old daughter who was delivered by the defendant doctor without complications via a vaginal delivery. CT Page 1649
The plaintiff lives in Manchester, Connecticut. The defendant, who specializes in obstetrics and gynecology, has an office in Hartford, Connecticut, and it was the defendant's intention to deliver the plaintiff's baby at Mt. Sinai Hospital in Hartford.
In May of 1984 the plaintiff, Cynthia DiNardo, became a patient of the defendant, Michael Lashgari, M.D., relative to her pregnancy. At about 29 weeks into the pregnancy, an ultrasound disclosed a condition known as placenta previa. Placenta previa is a condition whereby the placenta is mispositioned in the womb.
On December 17, 1984, the plaintiff had an appointment with the defendant, whereby she requested a cesarean section delivery on December 25, 1984, a date that coincided with her husband's birthday. Defendant was desirous of accomplishing a vaginal delivery.
At the next appointment on December 26, 1984, the plaintiff again asked for a cesarean section delivery. The defendant was still planning for a vaginal delivery and scheduled January 2, 1985 as the next appointment.
On December 31, 1984, the plaintiff suffered a massive hemorrhage, losing approximately 2,000 cc's of blood. She was taken to Manchester Memorial Hospital where a "stat" emergency cesarean section was performed, resulting in the birth of her son, Joseph Christian DiNardo. The plaintiff received emergency care and her son, who suffered from respiratory distress syndrome, was transported to Bay State Medical Center in Springfield, Mass.
The plaintiff's experience was described as a life threatening one and she related the occurrence in dramatic fashion.
The plaintiff testified that December 31, 1984 was her husband's day off. That she was in the bathroom at her home when she hemorrhaged; she thought she was dying; she lost strength and was rendered unconscious. Her husband found her and called the paramedics who arrived, placed the plaintiff in shock pants and transported her to Manchester Memorial Hospital.
The plaintiff came to in the recovery room. She felt her baby was dead. It was with disbelief that she learned he was alive and she inquired if there was brain damage. Since her child was taken to Bay State Medical Center in Massachusetts, the plaintiff did not see him for one week. The plaintiff was hospitalized until January 7, 1985. CT Page 1650
The plaintiff indicated that she now has a scar on her abdomen about 6 inches long and about 1 inch wide, However the scar was never shown to the jury, not even by photograph. The plaintiff also indicated that she relives her experience every month during her menstrual period.
There was no evidence that the plaintiff required any further medical attention after her release from the hospital on January 7, 1985, nor was there any indication of needed future medical attention or expenses. Plaintiff was not employed at the time of the occurrence and there was no evidence of impaired earning capacity. Also no disability rating was stated.
The plaintiff's medical expenses totaled $6,959.33 of which $4,098.95 was attributed to the Manchester Memorial Hospital and the ambulance. Some of her medical expenses would have been incurred irrespective of the occurrence in question. The medical bills for her son were $2,302.93. At trial the plaintiff's life expectancy was 40.8 years.
This court observes that the testimony of the plaintiff evoked a great deal of sympathy for her. Her testimony was dramatic and presented a vivid picture of her plight, whereas the defendant's testimony appeared professionally detached thus giving the jury a sharp contrast.
The plaintiff presented the expert testimony of Marshall W. Carpenter, M.D., who testified that the defendant failed to exercise that degree of care, skill and diligence ordinarily had by specialists in obstetrics and gynecology in the United States, in that: the defendant made no provision for making available to the plaintiff immediate access to blood products; that there was no provision made for having the plaintiff immediately near to an operating room; that there was no plan of management because neither was an amniocentesis provided for nor were there plans for the possibility of bleeding before fetal maturity and that there was a lack of patient education as to the risks and benefits of early delivery versus the risks and benefits of continuing the pregnancy.
Dr. Carpenter also stated that the acts or omissions of the defendant were the cause of the plaintiff's injuries.
The defendant presented the expert testimony of Charles G. O'Connell, M.D., who in response to the same hypothetical question asked of Dr. Carpenter, stated that the management of plaintiff by the defendant was proper. Dr. O'Connell also stated that he agreed with Dr. Lashgari's judgment not to perform an amniocentesis in December of 1984. CT Page 1651
Liability was in question and the jury was obligated to evaluate the testimony of the two medical experts on this issue. Therefore, to find liability in favor of the plaintiff, the jury was required to give greater weight and credibility to the plaintiff's medical expert.
The court observes that the jury determined the issue of liability and assessed damages totaling $525,000 in about two hours of deliberations.
Whether the plaintiff sustained her burden of proof is a question for the jury to determine. In this case, the plaintiff, presented sufficient evidence to sustain the verdict of the jury. Therefore, the verdict is not contrary to the evidence.
 III.
Even though from the evidence presented, the jury could reasonably have found that the plaintiff had sustained her burden of proof by a fair preponderance of the evidence on the question of liability, the more troublesome issue is whether on the facts of this case, a verdict of $500,000 is excessive as a matter of law.
In Lengel v. New Haven Gas Light Co., 142 Conn. 70, the Supreme Court stated at page 78, "If the amount determined by the jury convinces the mind that the verdict is in fact excessive, unjust and entirely disproportionate to the loss sustained, it becomes our duty to act."
In Buckman v. People Express, Inc., 205 Conn. 166, the Supreme Court found that an award of $51,595.94 based on special of $1,595.94 was excessive and ordered a new trial unless the plaintiff filed a remittitur of $35,000.
In Buckman, the court said in a footnote on page 176, "although this court does feel the award was excessive, excessiveness appears attributable to outrage over the total lack of regard for the rights of the plaintiff which the defendant exhibited in this matter." Such an observation could have reasonable relevance in the instant case, in that the jury could have rendered such a large award based on being outraged at the defendant's lack of regard for the request of the plaintiff to have a cesarean section prior to December 31, 1984 which would have avoided her hemorrhaging.
In the recent case of Wood v. City of Bridgeport, et al,216 Conn. 604, the Supreme Court held that a verdict of $400,000 was not excessive. Here the plaintiff sustained a fractured CT Page 1652 skull and an epidural hematoma in his fall. The plaintiff was caused to be susceptible to epileptic seizures and would be required to take dilantin, an anti-seizure medication for the remainder of his life. The side effects of the medication caused the plaintiff to experience memory loss and depression. The plaintiff had lost earning of $10,000, medical expenses of $7,000 and a life expectancy of 19.3 years.
While the cases cited are dissimilar to the instant case, a comparative examination of them is helpful in determining whether the award in the instant case is excessive. It is of particular value to analysis factors such as injuries, specials and permanency, in assessing whether an award falls somewhere within the necessarily uncertain limits of fair and reasonable compensation or whether the verdict so shocks the sense of justice as to conclude that the jury was influenced by partiality, mistake or corruption.
A jury award, based on the judge's instruction, is to be principled on fair, just and reasonable compensation, it is not meant to be a windfall. There is required to be a rational relationship between injuries suffered, losses sustained and the amount of the jury verdict. The area of jury judgment is wide and a judge should not act as a seventh juror. He or she should not substitute their idea of what the award should be for the jury's determination. However, a judge has a duty not to allow a jury to get carried away so as to render awards that will result in an injustice.
This court was surprised and shocked by the size of the verdict. The court is persuaded that based on the evidence in this case, that the jury award of $500,000 is excessive, exhorbitant and so shocks the sense of justice as to compel the conclusion that the jury was influenced by partiality or mistake.
For all the foregoing reasons, the defendants motion to set aside is granted on the grounds that the verdict is excessive.
Accordingly, the motion to set aside the verdict as to Cynthia DiNardo is granted and the verdict is set aside, unless the plaintiff, Cynthia DiNardo, within 3 weeks from the date when judgment is rendered, files with the clerk of the superior court a remittitur of $215,000 in which event the plaintiff, Cynthia DiNardo, shall recover of the defendant $285,000
STENGEL, J.