[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an appeal from an order of the Greenwich Probate Court accepting a report of commissioners appointed in accordance with General Statutes 45a-401 (formerly General Statutes 45-213b). The commissioners had ruled on claims submitted by Suzanne T. O'Connell, Sean Meenan and Leslie Meenan, as alleged creditors of the estate of Eugene W. Meenan, deceased, who died on June 14, 1985.
The claims against the estate included $135,000 to augment an alimony trust created by the decedent for the benefit of his former wife, Suzanne T. O'Connell.[1] The claims were rejected by the executors. The commissioners, in the first instance, denied all claims except one for personal payments and for unpaid expenses of Sean Meenan. These claims CT Page 10974 were denied without prejudice and the claimants were given the opportunity to have a further hearing upon presentation of appropriate documentation. This ruling and its subsequent acceptance by the Probate Court were appealed to this court in 1987 by Suzanne O'Connell. On January 14, 1988, the commissioners issued a final report which disallowed all the claims, and became the subject of an appeal in 1988, which was consolidated with the 1987 appeal. The defendants are the executors of Mr. Meenan's estate.
Suzanne O'Connell was married to Eugene W. Meenan in 1964. They were divorced in 1981. In connection with the dissolution of their marriage they signed a separation agreement dated February 24, 1981, which imposed certain obligations on the deceased with respect to alimony. Both paragraphs 3.6 and 16.1 of the separation agreement provide that his estate was responsible for all of Mr. Meenan's obligations under the separation agreement that he had not satisfied prior to his decease.[2]
Plaintiff O'Connell contends that the obligations in the separation agreement, which was incorporated in a judgment of dissolution of marriage entered in this court on March 19, 1981, have not been fulfilled by the estate.
Paragraph 3.2 of the separation agreement provided that if and when the plaintiff, Mrs. O'Connell, remarried, as she did, she would be entitled to $25,000 alimony per year for her lifetime. The decedent established an alimony trust dated April 29, 1981 with Manufacturers Hanover Trust Company as trustee, to be funded, according to the separation agreement, with "assets sufficient" to pay $25,000 per year, less the trustee's commissions, in equal monthly installments during the plaintiffs life. Mrs. O'Connell claims that the trust, which was funded with $185,000, has not generated income of $25,000 over the last several years, and that the executors and trustees, who are the decedent's widow, Lucinda Meenan, and John M. Hogan, have depleted principal a number of times in order to make up the shortfall. There is nothing explicit in the separation agreement either permitting or prohibiting invasion of principal, although the trust agreement with Manufacturers Hanover, to which Suzanne O'Connell, was not a party does permit such invasion.[3]
Mrs. O'Connell further contends that the principal will be exhausted prior to her death. She therefore filed a claim against the estate for $135,500 in order to augment the trust by this amount, and thus insure sufficient principal to generate $25,000 income per year.
The commissioners denied this claim on the basis that there had not been at that point a default in payment and that $25,000 per year alimony had always been paid each year. They ruled that the plaintiff Suzanne O'Connell's claim was premature, I and that the trust should not be CT Page 10975 augmented in anticipation of a prospective breach of the separation agreement which had not occurred.
This appeal followed pursuant to General Statutes 45a-186 (formerly45-288) and Practice Book 195. The case was referred to Attorney Ellen B. Lubell, an attorney trial referee, in accordance with General Statutes52-434(a) and Practice Book 428 et seq.
The attorney trial referee filed her report on October 1, 1990. She made a number of findings of fact, including: (1) the separation agreement of February 24, 1981, which was incorporated into the judgment of dissolution dated March 19, 1981, provided that upon the death of Eugene W. Meenan the obligations thereunder would become his estate's obligations; (2) the agreement provided for transferring monies to a trust such that plaintiff would receive $25,000 each year for the duration of her life:[4] (3) decedent had intended to preserve the principal of the trust for his children upon the death of plaintiff;[5] (4) plaintiff had received the sum specified from 1981 to the date of the decision; (5) the separation agreement does not permit invasion of the principal of the trust, but such invasion has nonetheless taken place because of an unanticipated shortfall in trust income; (6) Mrs. O'Connell was approximately 54 years of age, and that her life expectancy as of June 1990 was 30.3 years, and at current rates the trust would be exhausted well before that time; (7) in order to meet decedent's twin goals of providing the specified alimony each year until the plaintiff's death, and providing for his children upon their mother's death, the principal of the trust should not be invaded to satisfy the annual payments; (8) the market value of the trust as of the date of trial was $183,193, sufficient to generate an income of only $18,000 per year; (9) the appropriate interest rate to calculate future interest was between 7% and 8.5%, and at these rates it was necessary to augment the trust by an additional $123,000 to avoid it being exhausted within nine to twelve years; (10) the estate was still open and had not wound up its business, but would do so and distribute all its assets as soon as this case was concluded, thus precluding any future opportunity for the plaintiff to augment the trust; and (12) the defendants had failed to prove their special defenses of laches and waiver on the part of the plaintiff.
The attorney trial referee drew the following conclusions from these facts: (1) the separation agreement required $25,000 per year to be paid to Suzanne T. O'Connell during her lifetime, less commissions, regardless of any fluctuations in the market; (2) if the trust corpus had to be invaded in order to produce this amount, then the corpus should be augmented; (3) the trust was underfunded and continued invasions of the corpus would result in its exhaustion before Mrs. O'Connell's death based CT Page 10976 on the life expectancy tables; and (4) the corpus should be increased by $123,000 which, in addition to the then current principal of $183,000, would result in a trust corpus of approximately $306,000, which would be sufficient to produce annual income of $25,000.
In accordance with Practice Book 438, the defendants moved to correct the attorney trial referee's report. They claimed that the findings of fact should be amended in a number of ways including: (1) that the plaintiff submitted no evidence as to the established claim period or the date her claim was served upon the fiduciaries or their attorney, thereby failing to prove that their claims were "timely," a necessary element of her appeal; (2) that the attorney trial referee erroneously and over the objections of the defendants granted the plaintiff permission to submit evidence post-trial regarding the timeliness of her presentation of claims to the executors; (3) that the separation agreement should more accurately be described as not prohibiting invasion of the principal of the trust rather than "not provid(ing) for it"; (4) that the plaintiff never established the times when invasion of the principal had occurred, or the frequency of such invasions; (5) that the projected income of the trust for the next thirty years should have been included, to permit the defendants to establish that plaintiff's claims were premature; (6) that the finding that the trust would be exhausted before the expiration of Suzanne O'Connell's life expectancy should be amended to more accurately reflect that this was only what plaintiff's expert stated; (7) that the finding that plaintiff might live longer than her life expectancy should state that she might also live less long; (8) that the separation agreement did not require the decedent to establish a remainder interest in his children, and that the power to invade principal as provided in the trust was inconsistent with an intent to preserve the principal for his children; (9) that the separation agreement did not require the annuity approach to investing, upon which the referee's findings were predicated, and that a combination of fixed income and stock, rather than fixed income alone, should have been utilized;[6] (10) that plaintiff never established the market value of the trust portfolio at the time of the Probate Court hearing, as contrasted with the time of trial before the referee, which was necessary to determine the relevant annual income; (11) that the trust income stated in the findings, $18,000 per year, is only a projected income; (12) that the defendants' own expert testified that an 8.5% interest rate would be necessary to generate $25,000 a year only in a response to the plaintiff's attorney's hypothetical question using an annuity approach to investing; (13) that an 7% — 8.5% interest rate is applicable only if one uses an annuity approach to investing; (14) that defendants' expert's testimony that the trust had grown in excess of 20% since its inception, and has averaged a return of over 15% per year over its life, should have been included in the findings; (15) that there CT Page 10977 should have been a finding whether the plaintiff presented any evidence that the estate had not been prejudiced by the delay in plaintiff filing her claim, such a finding being necessary to defeat defendant's contentions of waiver and laches; and (16) that the defendants presented evidence that the trust could generate sufficient income to meet all obligations.
The defendants also asked that additional findings be made to the effect that Mr. Meenan funded the alimony trust with $185,000, which fully met his obligations under the separation agreement and judgment, and that the plaintiff knew the trust corpus could be invaded and was being invaded and never complained until after the decedent died.
The attorney trial referee declined, however, to make any material changes in her report and recommendations. Pursuant to Practice Book 439, the defendants filed exceptions to the report, asking this court to correct the report, and they properly filed portions of the transcript. The exceptions contended that the attorney trial referee erred in failing to make the corrections set forth in the defendants' motion to correct. Practice Book 440.
The transcript in this case has been reviewed and it is clear that there is ample support for the referee's factual findings. Among her key findings was that the parties to the separation agreement intended that Mrs. O'Connell would, upon her remarriage, receive $25,000 per year for the rest of her life.[7] The referee concluded that the trust could not generate $25,000 per year without being augmented, and that otherwise it would run out of money long before the plaintiff's estimated life expectancy. This finding was based on testimony of one Ward S. Curran, who had been a professor of finance at Trinity College in Hartford for over thirty years and who held a Ph.D. from Columbia in economics.[8]
The referee also found that the annuity method was the proper mechanism to estimate the value of the trust and its expected income. Professor Curran testified to this effect.[9]
Of course, there is some contrary evidence in the transcript relating, for example, to the proper method of calculating the value of a trust, the annuity method or some other way, such as that testified to by an expert for the defendants, viz, a combination of fixed income and equities. However, reading the motion to correct and exceptions, one senses that the defendants are attempting to substitute their own version of the facts for those found by the referee, a practice discountenanced in Argentis v. Gould, 23 Conn. App. 9, 19, 579 A.2d 1078 (1990). A number of their objections to the findings of fact claim that there was some testimony contrary to that credited by the referee. However, as was said in Beizer v. Goepfert, 28 Conn. App. 693, 706, 613 A.2d 1336, cert. denied, CT Page 10978224 Conn. 901, A.2d (1992), "[t]he trial court is not bound by the uncontradicted testimony of any witness . . . The fact that some of the statements by the plaintiff's witnesses remained uncontroverted does not mean that the trier of fact was required to accept that testimony." Since the evidence as set forth in the transcript supports the referee's factual findings, the exceptions to the report are denied.
The defendants also filed objections to the acceptance of the report, Practice Book 440, on the grounds that the conclusions of fact stated therein were not supported by the subordinate facts found, and that the referee erred in her rulings. Objections were specifically taken, among others, to the following conclusions of the referee: (1) that the plaintiff submitted timely proofs of claim; (2) that the plaintiff should be allowed to add evidence after trial; (3) that plaintiffs claim was not time-barred; (4) that evidence could be taken on the value of the trust at the time of trial, rather than at the time of the hearing by the commissioners; (5) that decedent underfunded the trust and did not satisfy the alimony obligation during his lifetime; (6) that plaintiff was guaranteed $25,000 per year income and did not bear the risk of market fluctuations; (7) that only an annuity approach to investment should be used and that payments to plaintiff should be derived from trust income alone; (8) that plaintiff's claim was not premature; and (9) that defendants failed to establish their defenses of laches and waiver.
It should be noted at this point that the propriety of the trustee's invasion of trust corpus to pay the required $25,000 per year alimony to the plaintiff is not an issue in this case. The trustee, Manufacturers Hanover, was given specific discretion to invade principal. The issues are whether the claim against the decedent's estate was presented in a timely fashion, and, if so, whether the claim is proper and valid, and therefore should have been accepted by the executors.
In analyzing this claim against the Meenan estate, it is axiomatic that this court's authority in reviewing an attorney trial referee's recommendations is a limited one. As our Supreme Court in Dills v. Enfield, 210 Conn. 705, 714, 557 A.2d 517 (1989), held: (i) the trial court may not "retry the case"; (ii) a court may not find additional facts or reject facts found by the referee unless, in the words of Practice Book 439, "a material fact has been found without evidence or the (referee) has failed to find an admitted or undisputed fact, or had found a fact in such doubtful language that its real meaning does not appear"; and (iii) a trial court may not engage in "fact-finding contrary to the report of the referee." Id., 716. Furthermore, "[i]t is well settled that the fact finder determines with finality the credibility of witnesses and the weight to be given their testimony." Plikus v. Plikus, 26 Conn. App. 174, CT Page 10979 177, 599 A.2d 392 (1991).
Once the findings of fact by the referee are accepted, as they have been in this case, then this court's task, according to Bernard v. Gershman, 18 Conn. App. 652, 656, 559 A.2d 1171 (1989), is to determine whether the conclusions of fact and law "are legally and logically correct and whether they find support in the facts found by the referee." Practice Book 440. The Appellate Court, in words pertinent to this case, added that "[w]here evidence is in conflict, its probative force is for the trier of act to determine." Id.
Thus, the issue is whether the referee's conclusions follow logically and legally from her findings of fact. Attorney Lubell found as facts that the parties to the separation agreement intended that Suzanne O'Connell would receive $25,000 per year for life; that the trust principal was being invaded in order to make these annual payments; and that if the trust was not augmented, it would run out of funds long before the decease of Mrs. O'Connell according to the life expectancy tables. She then concluded that the trust should be augmented with a recommended amount which would make it actuarially sound. I believe this conclusion follows logically and legally from the findings of fact made by the referee, and accordingly her recommendations are accepted. No material error in the referee's report has been found, or any other sufficient reason why it is unacceptable. Practice Book 443. In the words of Practice Book 440, the conclusions of fact "were properly reached on the basis of the subordinate facts found."
Comment on several other contentions of the defendants is required. The first concerns the timely filing of plaintiffs claim against the estate pursuant to General Statutes 45a-395 (formerly 45-205). This court remanded the case to the attorney trial referee with instructions to set forth the basis for her finding in her original report that the plaintiff's claim had been presented in a timely fashion. Plaintiff's counsel then conceded that through inadvertence, evidence on this subject had not been presented to the referee. The plaintiff submitted a motion to the referee requesting leave to reopen the trial for the limited purpose of establishing the timeliness of the presentation of the claim. The attorney trial referee granted this motion and held an evidentiary hearing. The plaintiff then submitted evidence that her claim had been presented to the executors and/or their attorneys and/or the Probate Court, as agent for service of process on the fiduciaries, on December 2, 1985, which was within the time period ordered by that court for the presentation of claims, viz., December 12, 1985. I believe this decision to permit additional evidence was within the discretion of the attorney trial referee based on Wood v. City of Bridgeport, 216 Conn. 604, 606, CT Page 10980583 A.2d 124 (1990).[10]
The defendants contend that by permitting the reopening of the case and the introduction of evidence regarding the timeliness of the presentation of plaintiff's claim, the referee was acting contrary to the remand of the case by this court. This is incorrect. When plaintiff conceded that through inadvertence, evidence on presentation of the claim had not been introduced, and requested leave to do so, the attorney trial referee acted properly in deciding to reopen the case, and in subsequently finding after an evidentiary hearing that plaintiff's claim had been presented in a timely fashion.
The defendants also filed a motion to correct the supplemental reports concerning presentation of the claim. In supplemental reports dated May 27, 1992 and June 15, 1992, the referee declined to make any material or substantive changes in her recommendations. The defendant executors filed exceptions claiming that the referee had failed to follow this court's instructions on the remand, a contention which, as stated previously, is incorrect. Thus, the exceptions to the supplemental reports are overruled.
Thereafter, the defendants filed objections to the supplemental reports concerning presentation of the claim against the estate. We have previously indicated that the ruling to take additional evidence was within the discretion of the attorney trial referee, and properly within the rule of Wood v. Bridgeport, supra, and hence the objections to the referee's reports are denied.
Secondly, the defendants assert laches and waiver on the part of the plaintiff. This argument is based on a claim that Mrs. O'Connell knew that the trust agreement with Manufacturers contained a clause permitting invasion of principal, that she knew this depletion of the corpus was occurring, and did not complain until the filing of her claim against the estate. The plaintiff testified that although she received a copy of the trust, she never studied it in any detail, but rather, when Mr. Meenan was alive, she had relied on him to live up to his alimony obligations, and that only after his death did she focus on the invasion clause. Laches involves both an inexcusable delay on the part of the plaintiff and prejudice, for example, where "the defendant is led to change his position with respect to the matter in question." Brock v. Cavanaugh,1 Conn. App. 138, 140, 468 A.2d 1242 (1984). I believe that the plaintiff's delay, if any, was not inexcusable. Even more to the point, the defendant executors suffered no prejudice that I can discern. Waiver is the "intentional relinquishment of a known right." Olean v. Treglia,190 Conn. 756, 772, 463 A.2d 242 (1983). Mrs. O'Connell, however, presented her claim to the executors in a timely fashion. Furthermore, there is no CT Page 10981 evidence that she intentionally relinquished her right to $25,000 per year alimony.
A further contention of defendants, based apparently on Stevens' Appeal from Probate, 157 Conn. 576, 582, 255 A.2d 632 (1969), is that the referee improperly permitted the introduction of evidence occurring after the hearing of the commissioners had taken place. "The Superior Court . . . could not, however, properly review the action of the Probate Court by a consideration of circumstances which had arisen thereafter". Id. In this case, the commissioners ruled that Mrs. O'Connell's was premature and hence did not reach the question of the specific monetary amount by which principal should be augmented. Once the referee ruled on the propriety of the trustee's depletion of principal, based on decedent's obligations under the separation agreement, it became necessary to determine how much money would be needed to produce annual income of $25,000. This is not equivalent to the consideration of after-occurring events as discussed in Stevens' Appeal, supra.
In terms of the underlying issue of whether this alimony trust should be augmented in order to prevent its depletion, when the separation agreement explicitly neither permitted nor prohibited invasion, no case directly on point has been brought to my attention or located. I believe, however, that because the decedent obligated himself under the agreement to transfer to a trust "assets sufficient" to pay his wife $25,000 a year for the duration of her life, he, and now his estate, must augment the trust if the assets are not "sufficient" to generate income of $25,000 per year. If depletion of principal is allowed to continue, the decedent's estate would be in violation of that provision of the separation agreement which indicates that alimony is payable throughout the plaintiffs life. Thus, I believe the referee's conclusion that the claim should have been honored by the executors is sound.
Accordingly, the report is accepted, the appeal from the Probate Court is sustained, and the defendant executors are ordered to pay from the decedent Eugene W. Meenan's estate the sum of $123,000 to the trustee of their decedent's alimony trust. Costs are to be taxed by the clerk.
So Ordered.
Dated at Stamford, Connecticut, this 11th day of December, 1992.
WILLIAM B. LEWIS, JUDGE