[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
 I
In Gilbert and Sullivan's "Trial by Jury", the jury is asked,
 Oh, will you swear by yonder skies, Whatever question may arise, "Twixt rich and poor, "twixt low and high, That you will well and truly try?
to which the jury replies,
 To all of this we make reply To all of this we make reply By the dull slate of yonder sky; That we will well and truly try, CT Page 2036
In the instant case it can be said that the jury did well and truly try, they did so with all their hearts, however, the result rendered was clearly off the charts.
 II
This civil action was commenced by complaint dated November 15, 1998 and is a case wherein the plaintiff alleged injuries arising out of an automobile accident with Marlynn Weinstein which occurred on April 23, 1996 at Rt. 10 south of its intersection with Canal Street in Simsbury, Connecticut.
The jury could reasonably have found the following facts: On April 23, 1996, the plaintiff was operating her motor vehicle in a northerly direction on Rt. 10 in Simsbury, Connecticut near its intersection with Canal Street. The Defendant was operating her motor vehicle in a southerly direction near said intersection and was stopped at a red light. The plaintiff had slowed down and was attempting to make a left hand turn onto Canal Street when the collision took place. The plaintiff claimed she had a green arrow that allowed her to turn left. There was a dispute as to who had the right of way relative to the sequence of the traffic signal at said intersection. The investigating officer's report states "the turn arrow cycles to green then off and southbound traffic has a green light." "The signal was functioning properly." The defendant testified that she proceeded forward in response to a green light. The collision took place in the intersection.
Plaintiff's date of birth is October 27, 1956 and at the time of trial had a life expectancy of 33.1 years. Plaintiff testified that she struck her chest and knee at time of impact.
The plaintiff was taken from the scene by Simsbury ambulance. She was treated by Drs. Michael Kruger and Peter Wade and received physical therapy at the Greater Hartford Physical Therapy, P.C.
Plaintiff testified that she has pain in her back and knee. A report from Hartford Hospital Department of Radiology, exhibit 8-A dated April 23, 1996, indicates "there is no evidence for fracture or dislocation of the lumbosacral spine." "There is some mild degeneration change noted at the L[5]-S[1] disc space." In his report of December 11, 1996, Dr. Kruger states in part "Based on her examination today, and according to the American Medical Association's Guides to the Evaluation of Permanent Impairment" (Fourth Edition), it is my opinion that she has a residual 5 percent permanent partial disability to both the lumbosacral spine as well CT Page 2037 as the right lower extremity, secondary to right patellofemoral symptoms."
The plaintiff has testified that her quality of life has been affected because of the injuries resulting from the accident. She indicated that her ability to dance, roller skate and do long distance walking has been diminished.
In his summation to the jury, the plaintiff's counsel submitted a document entitled "Special Damage" as an aid for the jury in seeing the items of special damage. The document stated the following:
 SPECIAL DAMAGES
The medical bills in evidence are as follows:
 Simsbury Ambulance $ 262.00 Hartford Hospital ER 610.18 Immediate Medical Care Center 70.00 Dr. Michael Kruger 405.00 Dr. Peter Wade 557.00 Greater Hartford P.T. 2, 810.00 Prescriptions, CVS 70.96
TOTAL $4,785.14
 The lost wages in evidence total $4,300.00 Plaintiff testified that she earned $1,075.00 per week, and was out of work for three weeks, plus an additional 35 hours thereafter for a total of four weeks, equaling a total claim of $4,300.00.
 TOTAL SPECIAL DAMAGES, INCLUDING MEDICAL BILLS AND LOST WAGES $9,085.14
Liability was in question and the plaintiff's injuries were contested by the defendant.
The testimony of Officer Logan of the Simsbury Police Department, with reference to his report, raised questions about the incident as to who had the right of way at said intersection.
 III
On December 21, 2000, the jury in the above-captioned matter, brought CT Page 2038 in an initial verdict for the plaintiff as follows: economic damages $9,500, non-economic damages $550,000, which totaled $559,500. The jury found the plaintiff to be 20% negligent resulting in a total verdict of $447,600.
The Court charged the jury on reconsideration and ordered the jury to deliberate further regarding damages. The jury then returned a verdict as follows: economic damages $9,500, non-economic $350,000 for a total of $359,000 [note the amount should be $359,500]. The new net amount was $287,100 [note the correct amount should be $287,600]. The Court again instructed the jury on reconsideration and sent back to reconsider again. The jury confirmed their verdict which resulted in a verdict for the plaintiff in the amount of $287,600, which was ordered accepted and recorded by the Court.
The defendant has moved to set aside the verdict and for a remittitur pursuant to Conn. Gen. Stat. § 52-216a on the basis that the jury verdict was excessive as a matter of law.
 IV
It is basic that litigants have a constitutional right to have a jury determine issue of fact. Bambus v. Bridgeport Gas Co., 148 Conn. 167. The amount of damages to be awarded is a determination for the jury to make.Szivos v. Leonard, 113 Conn. 522. Therefore, in analyzing the propriety of an award, the court must move carefully as to whether or not it should intrude with the verdict of the jury. However, it is the court's obligation to set the verdict aside when it finds that manifest injustice is done and the verdict is palpably against the evidence. State v. ChinLung, 106 Conn. 701. Zarrelli v. Barnum Festival Society, Inc.,6 Conn. App. 322.
The test that has been established to determine if a verdict should be set aside, ". . . is whether the award of damages falls somewhere within the necessarily uncertain limits of fair and reasonable compensation in the particular case, or whether the verdict so shocks the sense of justice as to compel the conclusion that the jury was influenced by partiality, mistake or corruption." Wood v. Bridgeport, 216 Conn. 604.
Determination of damages is within the province of the jury and their determination should be set aside only when the verdict is plainly excessive and exorbitant. Wochek v. Foley, 193 Conn. 582. The evidence at trial must be reviewed in the light most favorable to sustaining the verdict. Gorczyca v. New York, New Haven Hartford Railroad Co.,141 Conn. 701. CT Page 2039
"The trial court has the inherent power to set aside a jury verdict which, in the court's opinion, is either against the law or the evidence. . . . Pursuant to this power, the trial court has the right and duty to set aside a verdict as being excessive or inadequate." O'Brienv. Sever, 183 Conn. 199, 208 (1981). The jury award should be sustained so long as it does not shock the sense of justice. Herb v. Kerr,190 Conn. 136, 139 (1983).
In considering a motion for remittitur, the court must determine whether the award of damage falls somewhere within the necessarily uncertain limits of fair and reasonable compensation in the particular case, or whether the verdict so shocks the sense of justice as to compel the conclusion that the jury were influenced by partiality, prejudice, mistake or corruption. Wood v. Bridgeport, supra.
It is only where a verdict is so manifestly against the evidence as to indicate jury misconduct, mistake or partiality that it should be set aside. Burns v. Metropolitan Distributors, 130 Conn. 226.
A jury award, based on the judge's instruction, is to be principled on fair, just and reasonable compensation, it is not meant to be a windfall. There is required to be a rational relationship between injuries suffered, losses sustained and the amount of the jury verdict. The area of jury judgment is wide and a judge should not act as a seventh juror. He or she should not substitute their idea of what the award should be for the jury's determination. However, a judge has a duty not to allow a jury to get carried away so as to render awards that will result in an injustice.
The Court concludes that in the instant case, there was insufficient evidence to support the jury's verdict of $287,600. The verdict is so unreasonable as to be excessive.
The Court finds that the manifest injustice of the verdict is so plain and palpable as to clearly indicate that some mistake was made by the jury to justify the concern that they were influenced by prejudice or partiality or that they were misguided in reaching their decision.
This Court was surprised and shocked by the size of the verdict. The court is persuaded that based on the evidence in this case, that the jury award of $287,600 is excessive, exorbitant and so shocks the sense of justice as to compel the conclusion that the jury was influenced by partiality or mistake. CT Page 2040
For all the foregoing reasons, the defendants motion to set aside is granted on the grounds that the verdict is excessive.
Accordingly, the motion to set aside the verdict is granted and the verdict is set aside, unless the plaintiff, within 3 weeks from the date when judgment is rendered, files with the clerk of the superior court a remittitur of $195,600 in which event the plaintiff, shall recover of the defendant $92,000.
Stengel, J.