## HARRY CHILDS *v.* FRANK BAINER
## (15048)

Borden, Berdon, Norcott, Katz and Palmer, Js.

Argued May 26—decision released August 15, 1995

*Katherine C. Callahan,* with whom, on the brief, were *Karen P. Blado, Robert R. Simpson* and *David A. Sylvestre,* for the appellant (defendant).

*James A. Mulhall, Jr.,* with whom was *Kevin T. Nixon, Sr.,* for the appellee (plaintiff).

KATZ, J. The sole issue on appeal is whether a trial court is required to grant an additur in a personal injury case in which the jury has awarded to the prevailing party economic damages but no noneconomic damages. The plaintiff, Harry Childs, had alleged and attempted to prove at trial that the negligent driving of the defendant, Frank Bainer, had caused him to sustain damages resulting from personal injuries. The jury returned a verdict in favor of the plaintiff and awarded him economic damages only.[1] Because the jury had failed to

---

[1] General Statutes § 52-572h (a) defines "economic damages" as "compensation determined by the trier of fact for pecuniary losses including, but not limited to, the cost of reasonable and necessary medical care, rehabilitative services, custodial care and loss of earnings or earning capacity excluding any noneconomic damages." The same subsection defines "noneconomic damages" as "compensation determined by the trier of fact for all nonpecuniary losses including, but not limited to, physical pain and suffering and mental and emotional suffering."

award noneconomic damages, the plaintiff, pursuant to General Statutes § 52-228b,[2] filed a motion with the trial court for an additur and, alternatively, to set aside the verdict as to damages only. The trial court denied the plaintiff's motion, and the plaintiff appealed from the judgment to the Appellate Court.

The Appellate Court held that the trial court had improperly denied the plaintiff's motion, determining that an award of economic damages coupled with an award of zero noneconomic damages is inadequate as a matter of law. The Appellate Court reversed the judgment and remanded the case "for further proceedings to determine a reasonable additur for noneconomic damages, to give the parties an opportunity to accept the additur, and, if they do not accept the additur, a new trial is ordered as to all issues." *Childs* v. *Bainer*, 35 Conn. App. 301, 305, 645 A.2d 1041 (1994). We granted the defendant's petition for certification to consider the following question: "Is it an abuse of discretion for a trial court to refuse an additur in a personal injury case in which the jury awarded economic damages but no noneconomic damages?" *Childs* v. *Bainer*, 231 Conn. 924, 648 A.2d 162 (1994). We conclude that the trial court did not abuse its discretion in denying the motion for additur in this case and, therefore, we reverse the judgment of the Appellate Court.

The following facts are relevant to this appeal. The plaintiff commenced an action against the defendant

---

[2] General Statutes § 52-228b provides: "No verdict in any civil action involving a claim for money damages may be set aside except on written motion by a party to the action, stating the reasons relied upon in its support, filed and heard after notice to the adverse party according to the rules of the court. No such verdict may be set aside solely on the ground that the damages are excessive unless the prevailing party has been given an opportunity to have the amount of the judgment decreased by so much thereof as the court deems excessive. No such verdict may be set aside solely on the ground that the damages are inadequate until the parties have first been given an opportunity to accept an addition to the verdict of such amount as the court deems reasonable."

seeking damages for personal injuries allegedly arising from a rear end collision caused by the defendant. The plaintiff claimed that, as a result of the defendant's negligent driving, the plaintiff "was thrown about the interior of his car and sustained bruises, contusions, lacerations and abrasions about his body and an acute strain/sprain of the cervical and lumbosacral area of the spine and from said injuries has suffered great pain and will continue so to suffer for the rest of his life." The plaintiff claimed that as a direct result of these injuries, he incurred medical expenses for hospitalization, doctor's care, drugs and medication, and would continue to incur such expenses in the future. The plaintiff also claimed a loss of earnings and earning capacity, which losses would also continue in the future. The defendant denied that he had been negligent and that he had caused the accident, stating that any injuries sustained by the plaintiff were the result of the plaintiff's own negligence and carelessness.

It is undisputed that at trial,[3] the plaintiff claimed medical expenses of $5129, lost earnings of $14,000, and damages for pain and suffering. In support of his claims, the plaintiff submitted evidence of an injury to his shoulder, which resolved itself within one week of the collision, a neck injury, which healed within five months of the collision, and a lower back injury, which left him with a 12 percent permanent disability as a result of the collision. The plaintiff did not claim property damage.

The defendant submitted evidence to rebut the plaintiff's claims, including: an emergency room report, which did not disclose the existence of any bruises, contusions, lacerations or abrasions on the plaintiff fol-

---

[3] We note that the plaintiff did not file any transcripts in this appeal. Also, the trial exhibits relevant to this appeal were unavailable for our review because they were misplaced by personnel at the Superior Court. The parties, however, submitted copies of these exhibits and stipulated to their accuracy.

lowing the collision; statements made by the plaintiff to emergency room medical staff that his body had not come into contact with any part of his car; evidence that he had returned to work at his nursery and land-scaping job the day after the accident; evidence that the plaintiff did not take painkilling medications despite his allegations of significant pain; emergency room and radiology reports on the day of the accident showing that the plaintiff's only complaint had concerned his neck and shoulder; a diagnosis from the plaintiff's doc-tor that the neck was "doing fine" and that the plaintiff suffered no permanent disability of the neck; and photo-graphs of the plaintiff lifting large cabinets soon after the collision. In short, the extent and duration of the plaintiff's injuries were "hotly contested."

The jury returned a verdict in favor of the plaintiff and awarded him $3649 in economic damages, but did not award any noneconomic damages. Thereafter, the plaintiff requested that the trial court order an additur or, if the defendant failed to accept the additur, set aside the verdict as to damages only. The trial court denied the motion, finding that "the award [was] not manifestly unjust and palpably against the evidence." The plaintiff appealed from the judgment to the Appel-late Court.

On appeal, the plaintiff claimed that an award of more than nominal[4] economic damages coupled with an award of zero noneconomic damages in an action seeking damages for personal injuries is inadequate as a matter of law. The Appellate Court agreed with the plaintiff and reversed the trial court's judgment. *Childs* v. *Bainer*, supra, 35 Conn. App. 305. The question before this court is whether the Appellate Court improperly

---

[4] " 'Generally, nominal damages are fixed without regard to the extent of harm done and are assessed in some trifling or trivial amount . . . .' " *Creem* v. *Cicero*, 12 Conn. App. 607, 611, 533 A.2d 234 (1987).

imposed a per se rule that an award of economic damages must be coupled with an award of noneconomic damages. The defendant argues that the decision to order an additur is a matter of judicial discretion and that the trial court did not abuse its discretion in light of the conflicting and insubstantial evidence of injury presented at trial. We agree with the defendant and reverse the judgment of the Appellate Court.

"In an appeal following certification, the focus of our review is not the actions of the trial court, but the actions of the Appellate Court." (Internal quotation marks omitted.) *Cahn* v. *Cahn*, 225 Conn. 666, 671, 626 A.2d 296 (1993). We must determine, therefore, whether the Appellate Court improperly concluded, as a matter of law, that a plaintiff's personal injury verdict is defective if the jury awards greater than nominal economic damages but zero noneconomic damages.

We accord great deference to a jury's award of damages. "Litigants have a constitutional right to have factual issues determined by the jury. This right embraces the determination of damages when there is room for a reasonable difference of opinion among fair-minded persons as to the amount that should be awarded. . . . This right is 'one obviously immovable limitation on the legal discretion of the court to set aside a verdict, since the constitutional right of trial by jury includes the right to have issues of fact as to which there is room for a reasonable difference of opinion among fair-minded men passed upon by the jury and not by the court.' . . . The amount of a damage award is a matter peculiarly within the province of the trier of fact, in this case, the jury." *Mather* v. *Griffin Hospital*, 207 Conn. 125, 138, 540 A.2d 666 (1988). Similarly, "[t]he credibility of witnesses and the weight to be accorded to their testimony lie within the province of the jury." *Desmarais* v. *Pinto*, 147 Conn. 109, 110, 157 A.2d 596 (1960). "In considering a motion to set aside the verdict,

the court must determine whether the evidence, viewed in the light most favorable to the prevailing party, reasonably supports the jury's verdict. *Campbell* v. *Gould,* 194 Conn. 35, 41, 478 A.2d 596 (1984)." (Internal quotation marks omitted.) *Skrzypiec* v. *Noonan,* 228 Conn. 1, 10, 633 A.2d 716 (1993).

"The trial court's refusal to set aside the verdict or to order an additur is entitled to great weight and every reasonable presumption should be given in favor of its correctness. In reviewing the action of the trial court in denying the motions for additur and to set aside the verdict, our primary concern is to determine whether the court abused its discretion and we decide only whether, on the evidence presented, the jury could fairly reach the verdict they did. The trial court's decision is significant because the trial judge has had the same opportunity as the jury to view the witnesses, to assess their credibility and to determine the weight that should be given to their evidence. Moreover, the trial judge can gauge the tenor of the trial, as we, on the written record, cannot, and can detect those factors, if any, that could improperly have influenced the jury. . . . Our task is to determine whether the total damages awarded falls somewhere within the necessarily uncertain limits of fair and reasonable compensation in the particular case . . . ." (Citations omitted; internal quotation marks omitted.) *Ginsberg* v. *Fusaro,* 225 Conn. 420, 430–31, 623 A.2d 1014 (1993); accord *Skrzypiec* v. *Noonan,* supra, 228 Conn. 10–11; *Malmberg* v. *Lopez,* 208 Conn. 675, 679–80, 546 A.2d 264 (1988).

"If, on the evidence, the jury could reasonably have decided as they did, [the reviewing court] will not find error in the trial court's acceptance of the verdict . . . . However, it is the court's duty to set aside the verdict when it finds that it does manifest injustice, and is . . . palpably against the evidence. . . ." (Internal quotation marks omitted.) *Malmberg* v. *Lopez,* supra, 208 Conn.

679–80. "The only practical test to apply to a verdict is whether the award of damages falls somewhere within the necessarily uncertain limits of fair and reasonable compensation in the particular case, or whether the verdict so shocks the sense of justice as to compel the conclusion that the jury were influenced by partiality, mistake or corruption." (Internal quotation marks omitted.) *Wood* v. *Bridgeport*, 216 Conn. 604, 611, 583 A.2d 124 (1990). "It is the function of this court to determine whether the trial court abused its discretion in denying [a party's] motion. . . . In reviewing this issue, our sole responsibility is to decide whether, on the evidence presented, the jury could fairly have reached the conclusion it did. *Wu* v. *Fairfield*, 204 Conn. 435, 440, 528 A.2d 364 (1987)." (Citations omitted; internal quotation marks omitted.) *Skrzypiec* v. *Noonan,* supra, 228 Conn. 11.

We have previously explored the parameters of a trial court's discretion in ruling on a motion for additur. We have considered whether: (1) the jury award "shocks the conscience"; *Fazio* v. *Brown,* 209 Conn. 450, 551 A.2d 1227 (1988) (award of $15,570, reduced to $10,899 based upon contributory negligence of plaintiff, so inconsistent with severity of injuries that trial court did not abuse its discretion in granting additur to result in net verdict of $95,200); see *Buckman* v. *People Express, Inc.*, 205 Conn. 166, 530 A.2d 596 (1987) (abuse of discretion to deny motion for remittitur to reduce "exorbitant" award of $51,595.94, where special damages totaled only $1595.94 and plaintiff suffered emotional distress only as result of defendant's failure to allow plaintiff, following his discharge from employment, to continue group health insurance as required by General Statutes § 38-262d); (2) the plaintiff, who has proved substantial injuries, is awarded inadequate damages; *Johnson* v. *Franklin,* 112 Conn. 228, 229, 152 A. 64 (1930) (where jury awards exact amount of special damages and there

is no allowance for pain or substantial physical injuries, trial court abused discretion in denying motion to set aside verdict); and (3) the verdict is "inherently ambiguous." *Malmberg* v. *Lopez*, supra, 208 Conn. 675 (abuse of discretion to deny motion to set aside verdict in favor of plaintiff who had been awarded zero damages). We conclude that these considerations were not implicated in this case, and that the plaintiff has failed otherwise to demonstrate an abuse of the trial court's discretion in declining to award an additur or to set aside the verdict.

First, the jury verdict awarding $3649 in economic damages in this case was not so extremely low that it "shocked the conscience." "The test is whether the award falls within the uncertain limits of just damages or whether it is so inadequate that it shocks the sense of justice and compels the conclusion that it was the product of partiality, prejudice, mistake or corruption." *Esaw* v. *Friedman*, 217 Conn. 553, 566, 586 A.2d 1164 (1991); *Malmberg* v. *Lopez*, supra, 208 Conn. 679–80 (direct showing of partiality, prejudice, mistake or corruption is not required but may be inferred if amount awarded shocks sense of justice).

We recently addressed a similar claim in *Ginsberg* v. *Fusaro*, supra, 225 Conn. 430, wherein a defendant, who had filed a counterclaim for damages including medical expenses of $56,859.74, significant pain and suffering, and permanent injury, had been awarded $5000 damages against the plaintiff Miller and zero damages against Ginsberg.[5] The trial court granted Fusaro's motion to set aside the verdict against Ginsberg as to liability and damages and denied her motion to set aside the verdict against Miller. On appeal, Fusaro claimed that the damage award against Miller was inadequate

---

[5] The plaintiffs in *Ginsberg*, Martin Ginsberg and Robert Miller, both dentists, had sued the defendants, Rita Fusaro and John Fusaro, to recover money allegedly owed for dental services. Rita Fusaro counterclaimed against both Miller and Ginsberg, alleging dental malpractice.

and that the trial court should have ordered an additur or set aside the verdict of $5000 against Miller. We held that "[a]lthough the $5000 verdict is arguably inadequate as a matter of law when compared to Fusaro's claims that, as a result of Miller's negligence, she incurred medical expenses of $56,859.74, experienced great pain and suffering, and sustained a permanent injury, her claims for an additur cannot be sustained." Id., 430. We based our decision in part on the fact that "the issue of whether Fusaro's damages were causally related to the negligence of Miller or were incurred for the cosmetic purpose of correcting Fusaro's preexisting overbite was hotly contested. On the basis of the scant record before us, and the dispute as to whether the damages were causally related to the [injury], we summarily affirm the trial court's refusal to order an additur and its denial of the motion to set aside the verdict against Miller." Id., 432.

In this case, as in *Ginsberg*, it is undisputed that the cause, nature, and extent of the plaintiff's injuries were "hotly contested." Although the plaintiff had claimed back problems, there were pictures of him lifting large cabinets soon after the incident in question. Although he had alleged in his complaint "bruises, contusions, lacerations and abrasions," none were found by the treating medical staff at the hospital where he had been taken immediately following the accident. On the basis of this and other conflicting evidence regarding the injury, the jury could have reasonably concluded that the plaintiff was entitled to only $3649 in damages.

"The existence of conflicting evidence limits the court's authority to overturn a jury verdict. The jury is entrusted with the choice of which evidence is more credible and what effect it is to be given. *Ford* v. *Blue Cross & Blue Shield of Connecticut, Inc.*, 216 Conn. 40, 58, 578 A.2d 1054 (1990)." *Skrzypiec* v. *Noonan*, supra, 228 Conn. 11. "From the vantage point of the

trial bench, a presiding judge can sense the atmosphere of a trial and can apprehend far better than we can, on the printed record, what factors, if any, could have improperly influenced the jury." *Birgel* v. *Heintz*, 163 Conn. 23, 26, 301 A.2d 249 (1972). "If, on the evidence, the jury could reasonably have decided as they did, [the reviewing court] will not find error in the trial court's acceptance of the verdict . . . ." (Internal quotation marks omitted.) *Malmberg* v. *Lopez*, supra, 208 Conn. 679. Because there was evidence in the record tending to support the verdict reached by the jury, the verdict did not "[shock] the sense of justice in that the jury failed to evaluate properly the extent of [the plaintiff's] injuries and the consequences to [him] resulting from the accident." *Birgel* v. *Heintz*, supra, 28.

Second, the plaintiff was not entitled to an additur on the basis of our decision in *Johnson* v. *Franklin*, supra, 112 Conn. 229, wherein we held that a verdict for greater than nominal damages, which equaled the exact amount of medical and lost wages claimed, with no allowance for the substantial noneconomic damages, was inadequate. In *Johnson*, the verdict rendered for each of the three plaintiffs "was for the exact amount of the special damages[6] proved and with no allowance for the pain or the physical injuries suffered which were substantial." Because the award was for more than mere nominal damages, the jury had found that the defendant was liable and that the plaintiff's injuries were substantial. We concluded that where the plaintiffs are entitled to recover damages for their injuries, an award limited to nominal or special damages is "manifestly inadequate" and should be set aside. Id., 232.

The plaintiff's case is distinguishable from *Johnson*. First, in this case the jury did not award the entire

---

[6] The terms "special damages" and "general damages" have been replaced by statute with the terms "economic damages" and "noneconomic damages," respectively. See General Statutes § 52-572h (a) (1).

amount of claimed economic damages, but only 19 percent of that amount. Second, the evidence of physical injury offered by the plaintiff was neither substantial nor uncontested.[7] Thus, the damages awarded by the jury were not manifestly inadequate, and the plaintiff was not entitled, under the rationale of *Johnson*, to an additur or, in the alternative, to a new trial in accordance with § 52-228b.[8]

Third, there was nothing ambiguous about the jury award. See *Malmberg* v. *Lopez*, supra, 208 Conn. 675. In reliance on *Malmberg*, the plaintiff argues that a jury

[7] Although the plaintiff complained of neck pain to the hospital staff immediately after the accident, all subsequent reports by his treating physician, Richard Matza, reflect that he sustained no permanent neck injuries. Furthermore, although there were reports from Matza indicating that the plaintiff suffered spasms of the lower back and that he had a 12 percent permanent partial disability of the lower back, these reports were based on examinations of the plaintiff several months after the accident. Moreover, the radiology report created immediately after the accident shows there already existed a degenerative condition of his back. In light of the plaintiff's employment in the landscaping business and the absence of any reports by him of any injury to his lower back to the hospital staff immediately after the accident, the jury could have reasoned that this permanent disability was a result of his employment and not the defendant's conduct. Finally, because the plaintiff did not ask to submit interrogatories to the jury and has failed to supply this court with a transcript of the trial, he cannot establish that the award of 19 percent of the claimed economic damages was for medical damages as opposed to lost wages. Consequently, we disagree with the dissent that the jury awarded "substantial special damages" for medical expenses reflecting pain and suffering.

[8] The plaintiff also relies on *Jeffries* v. *Johnson*, 27 Conn. App. 471, 476, 607 A.2d 443 (1992), which affirmed the trial court's finding that the verdict was inadequate and concluded that the trial court did not abuse its discretion in concluding that the verdict should be set aside. Because the plaintiff in *Jeffries* met the *Johnson* requirements, however, this reliance is misplaced. First, in *Jeffries*, the jury found the plaintiff's economic damages to be the full amount sought by the plaintiff, but explicitly awarded zero noneconomic damages. Id., 473–74. Second, the Appellate Court stated in *Jeffries* that "where a plaintiff is entitled to recover damages for pain and suffering, an award limited to nominal or special damages is inadequate as a matter of law . . . ." Id., 476. On the basis of the record in this case, the jury could reasonably have concluded that the plaintiff had failed to prove such entitlement.

verdict in his favor for $3649 in economic damages and zero in noneconomic damages was manifestly inadequate as a matter of law, requiring an additur or, alternatively, a new trial. *Malmberg* is, however, inapposite. In *Malmberg*, the jury returned a verdict for the plaintiff, but awarded zero damages. The plaintiff moved to set aside the verdict, which was denied by the trial court. On appeal, we found that a plaintiff's verdict, coupled with an award of zero damages, was inherently ambiguous. "A plaintiff's verdict with a nominal damage award ordinarily suggests that the jury found that despite the defendant's liability, the plaintiff failed to prove damages. . . . The jury's intent in rendering a plaintiff's verdict with zero damages in a wrongful death action [however,] is far less clear." Id., 681–82.

In the case before us, however, the jury did not award zero damages; rather, it specifically awarded $3649 in economic damages, but declined to award any noneconomic damages. There is no apparent conflict in the verdict to create an ambiguity such as that at issue in *Malmberg*. See *Ginsberg* v. *Fusaro*, supra, 225 Conn. 425–26 (verdict in favor of defendant on her counterclaim but awarding zero damages, was inconsistent as matter of law).

We have previously determined that a jury may award a plaintiff less than the claimed special damages. *Rickert* v. *Fraser*, 152 Conn. 678, 211 A.2d 702 (1965). In *Rickert*, the jury was confronted with conflicting evidence concerning the plaintiff's injuries. The plaintiff had claimed $755.27 in medical expenses, $2719.20 in lost wages and $46,525.53 for pain and suffering. The jury awarded the plaintiff only $2500 in damages, and this court upheld the trial court's refusal to set aside the verdict because "[a]s to the matter of [the plaintiff's] injuries and the pain and suffering resulting therefrom . . . the medical testimony and opinions were conflicting to such an extent that the jury could have refused to credit the plaintiff's claims." Id., 680–81. Furthermore, we concluded that although medical expenses

of $755.27 were unquestioned, "[o]n the basis of the variances in proof as to the plaintiff's ability to work . . . the jury could reasonably have found that her evidence as to lost wages was exaggerated." Id., 680. In accordance with *Rickert*, given the conflicting evidence of the plaintiff's injuries, we find that the jury's award of 19 percent of the economic damages claimed, and an award of zero noneconomic damages, did not mandate an additur.

Finally, we are unpersuaded that the provisions of Tort Reform I and II[9] support the plaintiff's position. General Statutes §§ 52-572h[10] and 52-225d[11] require the fact finder to specify separately the amount of economic damages and the amount of noneconomic damages. These provisions are consistent with our history of recognizing the distinction between different kinds of damages. See *Waterbury Petroleum Products, Inc.* v. *Canaan Oil & Fuel Co.*, 193 Conn. 208, 223 n.16, 477 A.2d 988 (1984).

"Interpreting a statute to impair an existing interest or to change radically existing law is appropriate only

---

[9] Number 86-338 of the 1986 Public Acts is commonly known as "Tort Reform I," and was codified at General Statutes (Rev. to 1987) §§ 52-225a through 52-225d, 52-251c and 52-572h. Number 87-227 of the 1987 Public Acts, commonly known as "Tort Reform II," revised those sections.

[10] General Statutes § 52-572h (f) provides: "The jury or, if there is no jury, the court shall specify: (1) The amount of economic damages; (2) the amount of noneconomic damages; (3) any findings of fact necessary for the court to specify recoverable economic damages and recoverable noneconomic damages; (4) the percentage of negligence that proximately caused the injury, death or damage to property in relation to one hundred per cent, that is attributable to each party whose negligent actions were a proximate cause of the injury, death or damage to property including settled or released persons under subsection (n) of this section; and (5) the percentage of such negligence attributable to the claimant."

[11] General Statutes § 52-225d (a) (1) provides: "In any civil action wherein the claimant seeks to recover damages resulting from personal injury, wrongful death or damage to property occurring on or after October 1, 1987, and wherein liability is admitted or determined by the trier of fact, the court shall proceed to enter judgment as follows: (1) The trier of fact shall make separate

if the language of the legislature plainly and unambiguously reflects such an intent. . . . We recognize only those alterations of the common law that are clearly expressed in the language of the statute because the traditional principles of justice upon which the common law is founded should be perpetuated." (Citations omitted.) *Lynn* v. *Haybuster Mfg., Inc.*, 226 Conn. 282, 289–90, 627 A.2d 1288 (1993). As we have discussed, the common law of this state does not recognize the principle that awards limited to economic damages are inadequate as a matter of law and must be set aside, or the principle that a fact finder must award noneconomic damages each time it awards economic damages. Rather, as we have stated numerous times, "[t]he amount of a damage award is a matter peculiarly within the province of the trier of fact"; *Mather* v. *Griffin Hospital*, supra, 207 Conn. 138; and "if, on the evidence, the jury could reasonably have decided as they did, [the reviewing court] will not find error in the trial court's acceptance of the verdict . . . ." (Internal quotation marks omitted.) *Malmberg* v. *Lopez*, supra, 208 Conn. 679. Nothing in the language of §§ 52-225d or 52-572h, the legislative history and circumstances surrounding their enactment, the policies they were designed to implement, or their relationship to existing common law principles governing the same general subject matter suggests that the legislature intended to change our common law or to require that a different rule of law be applied. See, e.g., *Connecticut National Bank* v. *Giacomi*, 233 Conn. 304, 319, 659 A.2d 1166 (1995); *Williams Ford, Inc.* v. *Hartford Courant Co.*, 232 Conn. 559, 581, 657 A.2d 212 (1995).

On the contrary, the language chosen by the legislature reflects an intention that juries should separately determine awards of economic and noneconomic dam-

findings for each claimant specifying the amount of any economic damages and noneconomic damages, as defined in subsection (a) of section 52-572h."

ages and does not hint of a requirement that an award of one type of damages necessarily requires an award of the other type of damages. The thrust of Tort Reform II was to create a distinction between the two kinds of awards. 30 H.R. Proc., Pt. 16, 1987 Sess., pp. 5656–57. The legislature's intent was for the trier of fact to make "two findings," one based on economic damages and the other on noneconomic damages. Id. Each finding is required to be "separate." General Statutes § 52-225d (a) (1). This change was instigated by the insurance industry in order "to obtain necessary information regarding jury behavior in particular areas, such as the assessment of noneconomic damages." P. Gillies, Report of the Governor's Task Force on Insurance Costs and Availability (January 30, 1986) p. 17.

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to affirm the judgment of the trial court.

In this opinion, BORDEN, NORCOTT and PALMER, Js., concurred.

BERDON, J., dissenting. The majority concludes that a jury award for the plaintiff that consists of $3649 in economic damages but zero noneconomic damages is not ambiguous and, therefore, may be sustained on appeal. I disagree. Like the Appellate Court,[1] I conclude that in a personal injury case, when a plaintiff has alleged and produced evidence to support an award of both economic and noneconomic damages, a jury verdict that consists of substantial economic damages but zero noneconomic damages is ambiguous as a matter of law. Accordingly, the trial court should have set aside the verdict.

At common law, damages in a personal injury action were classified as either "special damages" or "general damages." "Ordinarily, such things as loss of earnings,

---

[1] See *Childs* v. *Bainer*, 35 Conn. App. 301, 305, 645 A.2d 1041 (1994).

doctors' and hospital bills are referred to as special damages." *Varley* v. *Motyl*, 139 Conn. 128, 134, 90 A.2d 869 (1952); see *Wood* v. *Bridgeport*, 216 Conn. 604, 610, 583 A.2d 124 (1990). General damages, on the other hand, included compensation for conscious pain and suffering. *Kiniry* v. *Danbury Hospital*, 183 Conn. 448, 460, 439 A.2d 408 (1981). In personal injury cases, the court would instruct the jury about these categories of damages. If the jury returned a verdict for the plaintiff, however, it would not break down the monetary award into these separate categories. Rather, it would return a lump sum verdict that included both special and general damages.

In the mid-1980s, the legislature rewrote the tort recovery provisions of our civil system in successive legislative enactments known together as Tort Reform.[2] As a result of the latter of these enactments, No. 87-227 of the 1987 Public Acts, the trier of fact in a personal injury action must break down its award of damages into two categories: economic damages and noneconomic damages. Economic damages are defined as "compensation determined by the trier of fact for pecuniary losses including, but not limited to, the cost of reasonable and necessary medical care, rehabilitative services, custodial care and loss of earnings or earning capacity excluding any noneconomic damages." General Statutes § 52-572h (a) (1). Noneconomic damages are defined as "compensation determined by the trier of fact for all nonpecuniary losses including, but not limited to, physical pain and suffering and mental and emotional suffering." General Statutes § 52-572h (a) (2). For the most part, therefore, "economic damages" are akin to special damages, and "noneconomic damages" are akin to general damages.

In *Johnson* v. *Franklin*, 112 Conn. 228, 152 A. 64 (1930), this court addressed a question identical to that

---

[2] See Public Acts 1986, No. 86-338; Public Acts 1987, No. 87-227.

posed here. In *Johnson*, the jury returned a verdict that awarded substantial special damages, but zero general damages, to each of three plaintiffs. This court concluded that the awards were inadequate as a matter of law. In overturning the trial court's refusal to set aside the verdicts, this court held that "if the plaintiffs were entitled to verdicts those rendered were *manifestly inadequate* and the motion to set them aside should have been granted." (Emphasis added.) Id., 232. Similarly, in *Ginsberg* v. *Fusaro*, 225 Conn. 420, 425, 623 A.2d 1014 (1993), we concluded that a jury verdict that found liability issues in favor of a defendant on her counterclaim against a particular plaintiff but that awarded her zero damages was "inherently ambiguous." We reasoned that "[u]nder these circumstances, we can only speculate as to why the jury failed to award damages in her favor; therefore, the jury's verdict creates an ambiguity." Id., 425–26; see *Malmberg* v. *Lopez*, 208 Conn. 675, 681, 546 A.2d 264 (1988); *Creem* v. *Cicero*, 12 Conn. App. 607, 611, 523 A.2d 234 (1987) ("[a]s a general rule, it is manifestly unjust for the jury to fail to award damages for pain and suffering when it awards special damages").

In my view, this case is squarely controlled by *Johnson* and *Ginsberg*. Although the terminology of *Johnson* involves "special damages" and "general damages," the principles announced therein apply with equal force to the economic and noneconomic damages at issue in this case. Under the rationale of *Johnson*, an award of economic damages without accompanying noneconomic damages cannot stand. Likewise, just as this court in *Ginsberg* found ambiguity in the jury's failure to award damages consistent with its verdict, the same ambiguity exists here, where the jury has awarded economic damages but no noneconomic damages to reflect pain and suffering.[3] On the basis of these clear prece-

---

[3] My conclusion would be different if the jury had awarded only nominal economic damages, or if the economic damages had been limited solely to

dents, therefore, the Appellate Court was correct in reversing the judgment of the trial court and remanding the case for agreement on an additur or, in the alternative, a new trial.[4]

The reasoning behind the majority's attempts to distinguish this case from *Johnson* eludes me.[5] First, the majority suggests that the percentage recovery of the amount of special damages alleged by the plaintiff is a factor. The majority points out that in *Johnson* each plaintiff was awarded an amount equal to his or her entire amount of special damages alleged,[6] but that in this case the plaintiff was awarded only 19 percent of the noneconomic damages he had alleged.[7] I do not

damages without accompanying pain and suffering, such as the cost of a physical examination to ascertain whether the plaintiff was injured

[4] The Appellate Court remanded the case as follows: "The judgment is reversed and the case is remanded for further proceedings to determine a reasonable additur for noneconomic damages, to give the parties an opportunity to accept the additur, and, if they do not accept the additur, a new trial is ordered as to all issues." *Childs* v. *Bainer*, supra, 35 Conn. App. 305.

[5] In an endeavor to distinguish this case from our well reasoned precedent in *Johnson* v. *Franklin*, supra, 112 Conn. 228, the majority speculates in footnote 7 that the jury could have found that the permanent injury to the lower back was related to his employment. But the majority simply misses the point. In this case, as in *Johnson*, we do not know what the jury found other than that, as a result of the defendant's negligence, the plaintiff sustained substantial special or economic damages in the amount of over $3600, but no pain and suffering or other noneconomic damages. In light of the medical evidence of injuries to the neck and lower back of the plaintiff, as a result of the defendant's negligence, an award of over $3600 for special damages and zero for pain and suffering and other noneconomic damages makes this verdict ambiguous. It is ambiguous because if they did not believe the plaintiff was injured, the jury would not have awarded him the *substantial* special damages. And the suggestion by the majority that the special damages awarded by the jury may have included lost wages does not make the verdict less ambiguous. "We presume that the jury will abide by its duty to make a thoughtful, reasoned decision, applying its common sense and logic to the evidence presented." *Wasfi* v. *Chaddha*, 218 Conn. 200, 211, 588 A.2d 204 (1991). For this reason, the verdict must be set aside.

[6] To the three plaintiffs in *Johnson*, the jury awarded $573.25, $240.57 and $142, respectively. *Johnson* v. *Franklin*, supra, 112 Conn. 229.

[7] The jury awarded $3649 of the $19,129 claimed by the plaintiff.

understand why this makes any difference. In both cases, the jury awarded substantial special damages, but nothing for pain and suffering. That is the significant factor, and that was the basis for this court's decision in *Johnson* to set aside the verdict. Indeed, this case is more compelling than *Johnson*. In *Johnson*, because the jury was not asked to differentiate between special and general damages, the court was required to assume that the amount awarded to each plaintiff, which matched exactly the amount he or she had alleged as special damages, consisted only of special damages. *Johnson* v. *Franklin*, supra, 112 Conn. 229. In this case, however, as a result of the specific jury findings required by § 52-572h, we know for a fact that the jury awarded the plaintiff only economic damages and refused to award noneconomic damages. Under the rationale set forth in *Johnson*, that ambiguity requires that the verdict be set aside.

Second, the majority attempts to distinguish this case on the basis that, in *Johnson*, this court stated that the pain and physical injuries suffered by the plaintiffs had been "substantial." I do not know what the *Johnson* court meant by substantial, but it is undeniable that the $3649 in special damages awarded in this case is not nominal. Moreover, although the evidence was hotly contested, there was medical evidence that the plaintiff had sustained a 12 percent permanent disability to his lower back and that he had suffered from pain.[8] Accord-

[8] Three reports of the plaintiff's physician, Richard Matza, were introduced into evidence during the trial. Each of the reports noted that the patient is "being followed along" for cervical and lumbar strain. The first report, dated March 10, 1989, indicated that the plaintiff's "low back has pain. [Physical therapy] definitely helps but the headaches continue." That report also referred to "[t]enderness in the paraspinous muscle region of the low back with spasm in the paraspinous muscle region of the low back" and "[r]esolved cervical strain with persistent low back strain."

The second report, dated May 10, 1989, indicated that the plaintiff's "neck is doing quite good; low back is better. He has some tenderness in the left posterior superior iliac spine." This report also referred to "cervical strain and low back strain."

ingly, the majority cannot attempt to distinguish this case from *Johnson* on the ground that the plaintiff had failed to demonstrate "substantial" injuries.

The majority's reliance on another aspect of *Ginsberg* v. *Fusaro*, supra, 225 Conn. 430,[9] and on *Rickert* v. *Fraser*, 152 Conn. 678, 211 A.2d 702 (1965), is misplaced. Both *Ginsberg* and *Rickert* went to trial prior to the legislature's enactment of Tort Reform and, consequently, the juries in those cases had not been required to separate their awards into economic and noneconomic damages. On appeal, therefore, this court was unable to determine whether the jury awards included only special damages, only general damages, or a combination of both. For example, in *Ginsberg*, a dental malpractice case, the injured party claimed special damages in excess of $50,000, along with general damages; we were unable to determine how the jury had apportioned the $5000 it had awarded to her against one of two dentists and whether that amount might have included damages for pain and suffering. Consequently, we affirmed the jury verdict. Likewise, in *Rickert*, although the plaintiff had claimed special damages of $3400, we had no way of determining whether any part of the $2500 awarded by the jury constituted damages for pain

The third report, dated February 7, 1990, concluded that "[h]is neck is doing fine. His low back is still symptomatic. . . . On physical exam, the patient has tenderness in the paraspinous muscle region of the neck and low back with pain . . . . My impression is the patient has improved cervical strain with chronic low back strain which has reached maximum improvement with a 12% permanent, partial disability of the back and none of the neck."

[9] *Ginsberg* was originally a collection case that ripened into a claim of dental malpractice. The plaintiff dentists brought the action against their former patient and her husband, and the patient counterclaimed for negligence. The jury returned a verdict for the patient against both dentists, Robert Miller and Martin Ginsberg. The jury, however, awarded $5000 damages against Miller only and none against Ginsberg. The trial court accepted the jury verdict as to Miller but set aside the verdict as to Ginsberg. We affirmed the trial court's decision on appeal. *Ginsberg* v. *Fusaro*, supra, 225 Conn. 432.

and suffering. This precise distinction was made clear in *Creem* v. *Cicero*, supra, 12 Conn. App. 611 ("there was no reasonable basis upon which the court could have concluded that the jury's verdict was limited to special damages"). These cases, therefore, are not helpful to the majority.

In sum, I agree with the Appellate Court that the trial court should have ordered an additur and, if the parties failed to agree on that sum, the trial court should have set aside the verdict and ordered a new trial.[10] I respectfully dissent.

---

[10] I disagree with the remand ordered by the Appellate Court. See footnote 4 of this dissent. Because this is a case of an ambiguous jury verdict, the trial court, in my view, should have set aside the verdict without first ordering an additur. See *Ginsberg* v. *Fusaro,* supra, 225 Conn. 430; *Johnson* v. *Franklin,* supra, 112 Conn. 232.