[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
RULING ON MOTION TO SET ASIDE AND FOR ADDITUR
After a trial, the jury awarded the plaintiff $1197 in economic damages and nothing in noneconomic damages; the award was reduced by 50%, the amount of the plaintiff's negligence as determined by the jury. The jury also returned a defendant's verdict on the issue of recklessness pursuant to § 14-297 of the General Statutes. The amount of the claimed past medical bills was substantially greater than that awarded; future medical bills were claimed as well as lost wages in the amount of approximately $6,000. The jury had initially returned a verdict finding each party 50% at fault and awarding no damages in any category. I returned the jury for further consideration, and, in slightly less than an hour, the jury returned the verdict described above. This verdict was accepted by the court.
The plaintiff has moved to set aside the verdict and has also requested an additur. The claim is that in the circumstances of this case, the award of a portion of the past medical bills and no noneconomic damages requires the setting aside of the verdict; the plaintiff also claims error in several evidentiary rulings. The defendant claims that damages were "hotly contested" and that the jury's verdict was, therefore, justified by the evidence and ought to stand.
The relatively recent case of Childs v. Bainer, 235 Conn. 107
(1995), frames the dispute regarding the verdict. In Childs, the plaintiff claimed to have suffered a shoulder injury, which resolved within one week, a neck injury which healed within five months, a lower back injury which resulted in a 12% permanent partial disability, roughly $5,000 in medical bills and about $14,000 in lost wages. The defendant submitted evidence of statements made by the plaintiff and a course of treatment and CT Page 2924 activities which tended to undermine claims that the plaintiff was seriously injured. The jury returned a verdict of roughly two thirds the amount of the medical bills in economic damages and nothing in noneconomic damages. The trial court denied the plaintiff's motions to set aside and for auditor, and the plaintiff appealed.
Justice Katz, who wrote the majority opinion, stressed that litigants have a constitutional right to trial by jury and extended great deference to the jury's award of damages. Childs, at 112. In such situations, the dispositive consideration is whether evidence presented at trial, in the light most favorable to sustaining the verdict, reasonably supports the verdict. Id. Justice Katz noted that the trial judge has the opportunity to view the witnesses and is in a position to judge whether the jury may have been mistaken or unfairly influenced. Id., 113.
The trial judge should disturb the jury's determination only if the verdict falls into one of three general categories: where the verdict shocks the sense of conscience; where in the face of "substantial injuries" inadequate damages are awarded; and where a verdict is "inherently ambiguous."[1] Id., 114. The plaintiff argues that all of the categories are satisfied in this case. I shall discuss the second and third categories first.
The seminal case in the second category is Johnson v. Franklin,112 Conn. 228 (1930). Johnson involved an automobile accident in which there were three plaintiffs, all apparently occupants of one of the cars involved in the accident. The jury awarded damages in favor of each plaintiff in the precise amount of the medical bills. The plaintiffs moved to set the verdicts aside as inadequate, and the defendant apparently moved to set the verdicts aside as well, on the ground that there was no evidence to support the verdict in favor of the plaintiffs as to liability. The trial court held that there was no evidence on which liability could be premised.
The Supreme Court reversed, holding that there was sufficient evidence to support the jury's verdict as to liability. The court went on to hold that, because there was "no allowance for the pain or the physical injuries suffered which are substantial"
(emphasis added), the verdict was manifestly inadequate.[2]
Because Johnson is premised largely on the proposition that it is illogical to award only medical bills if the injuries are CT Page 2925 "substantial", the definition of what is "substantial" is of more than passing interest. The injuries are not described in Johnson
itself. The records and briefs, however, indicate that one of the plaintiffs alone suffered a fractured right arm, glass from the windshield was imbedded in his flesh, he spent ten days in a hospital and thereafter he, a fourteen year old boy, was unable to throw a baseball. Another of the plaintiffs claimed to have been totally disabled. Records and Briefs of the Connecticut Supreme Court, 1930 October Term, 986.
Returning our attention to Childs, we note that Justice Katz distinguished Johnson on two grounds: she pointed out that, in that case, only a portion of the claimed medical bills were awarded and the evidence of physical injury "was neither substantial nor uncontested". Childs, supra, 117. Addressing the issue of the award of economic damages and no noneconomic damages, Justice Katz wrote:
 As we have discussed, the common law of this state does not recognize the principle that awards limited to economic damages are inadequate as a matter of law and must be set aside, or the principle that a fact finder must award noneconomic damages each time it awards economic damages. Rather, as we have stated numerous times, "[t]he amount of a damages award is a matter peculiarly within the province of the trier of fact; (citation omitted); and if on the evidence, the jury could reasonably have decided as they did, [the reviewing court] will not find error in the trial court's acceptance of the verdict. . ." Childs, supra, at 121.
The clear and unavoidable holding of Childs is that there is no talismanic litmus test based on categorization of damages; rather, the issue is whether evidence can reasonably support the jury's verdict.[3] A brief examination of the evidence in the case at hand is, then, warranted.
The jury could have found, among others, the following facts. The accident occurred at a rural intersection that was governed by traffic lights; there was evidence that at the time of the accident, the lights were not working. The plaintiff was driving a bakery delivery truck, the defendant was driving a pickup truck, in which his son was a passenger. Neither stopped prior to the collision. The vehicles approached from right angles; the defendant was to the plaintiff's right. The damage to the vehicles was not insignificant. At the scene, the plaintiff told CT Page 2926 the defendant that he was not hurt; he gave the son some bakery items from the truck. The officer who arrived on the scene reported a possible injury on the part of the plaintiff, but no one wanted medical care. The plaintiff did not go to an emergency room, but rather saw a company doctor; he went to St. Raphael's Occupational Health and Treatment Center the day after the accident. He later received chiropractic treatment, primarily for his back. Perhaps most significantly, the plaintiff had been in a substantially more serious accident several years before the accident in question, for which he had received a significant permanency rating. His chiropractor assigned an increase of an additional one percent permanent partial disability as a result of the accident underlying the case now in issue.
If the evidence regarding damages in Childs showed that the physical injury was "neither substantial nor uncontested", then the evidence in the case at hand is even less compelling. InChilds, $14,000 in lost wages were claimed and a 12% permanency rating was awarded.[4] The jury in this case may well have believed that although the plaintiff suffered injury sufficient to justify some treatment and diagnosis, and thus awarded the amount of the St. Raphael's bill, the jury apparently also found that the plaintiff did not sustain his burden of proof to show that he suffered pain and suffering from this accident such that "fair, just and reasonable compensation", insofar as money can do it, required monetary compensation. The additional one percent in permanency rating may simply not have been believed, or may have been thought to be trivial. In light of Childs and Wicher, and the great deference to be accorded jury verdicts, I cannot declare that the jury's verdict was utterly irrational.
The argument as to inherent ambiguity may be discussed more briefly. It is true, as the plaintiff argues, that some verdicts have been considered to be "inherently ambiguous." For example, where there has been a general verdict in favor of the plaintiff and no damages have been awarded, then the verdict has been held to be inherently ambiguous because it is not clear whether the jury made a mistake in saying that they found the issues on liability for the plaintiff when really they had not, or whether the jury found that the defendant was liable for the accident, but that no damages were found to have been caused by the accident. See, e.g., Fox v. Colony TV and Appliance,37 Conn. App. 453 (1995) (Jury returned a plaintiff's verdict form which read that the jury "find[s] the issues for the plaintiff and therefore find damages to be as follows: [total damages zero]"); CT Page 2927 accord, Malmberg v. Lopez, 208 Conn. 675 (1975). The language of general verdict forms can indeed create ambiguities.
The wording of the verdict form in this case obviated such difficulties. The first question on the plaintiff's verdict form was: "Do you find by a preponderance that the defendant Walsh was negligent and that such negligence was a substantial factor in causing the accident?" (emphasis added), to which the jury answered, "Yes." The jury then found both sides 50% negligent. The question as to economic damages was, "What sum of money do you award the plaintiff for past and/or future medical bills and lost wages which have resulted from injuries he sustained in theaccident?" (emphasis added). To this question, the jury first answered "O"; after they were sent back for reconsideration, they wrote "1197." Unlike the situations in the cases provided by the plaintiff, there simply is no ambiguity in the jury's responses. They found that the parties were equally negligent in causing the accident, but found, at first, that the accident caused no injuries. On reexamination, they found that a small amount of economic damages were caused by the accident. The wording of the verdict form has avoided any inherent ambiguity.
Turning to the first Childs criterion on which a verdict may be set aside, I find that my conscience is not shocked by the small award. Although the result is not necessarily one which I would have reached, I must give deference to the decision of the jury.
The plaintiff claims, in several different paragraphs, that the verdict was not supported by the evidence and was contrary to the evidence. There was evidence that both parties could have been liable for the accident, as neither stopped and, if lights were not working to control the intersection, the plaintiff was obligated to yield to the defendant if both would reach the intersection at approximately the same time. As to damages, the jury awarded the precise amount of the St. Raphael's bill, which included diagnosis and treatment by medical doctors. The St. Raphael's reports express some skepticism about the efficacy of the chiropractic treatment that the plaintiff was receiving, and the amount of the chiropractors' bills was not awarded as damages. The jury may have disbelieved any significant pain and suffering and permanency. There quite clearly is a rational basis for the jury's decision.
The plaintiff also claims errors in the course of the trial. First, error is claimed in the court's instructions regarding the CT Page 2928 right of way at intersections. I believe the instruction was substantially correct; it is also my recollection that no exceptions were taken to the charge. Error is also claimed in allowing the testimony of James Nesci, an employee of the Department of Transportation, who testified from business records regarding the traffic control device in question. Objection was made to the introduction of expert testimony offered by Nesci; because he had not been disclosed, either as an expert or otherwise, I sustained the plaintiff's objections as to experttestimony. I did allow Nesci to testify about the business record to the extent that it reported the factual observations of the DOT employees who were dispatched to the scene and who had the business duty to report their observations. I did not consider reference to a code to be opinion testimony, where, again, the code choices amounted to the reporting of factual observations. There was no objection on the ground that Nesci had not been included in the required trial management memorandum; I therefore did not consider that issue. My recollection is that I offered to inquire of the jury if any knew Nesci, but neither side so desired.[5]
The final set of reasons to set aside the verdict claim error in sending the jury back for reconsideration after the first verdict, which awarded no damages at all. The claim is that I should have simply ordered a new trial. I believe I have the authority to return the jury for reconsideration so long as it is made clear to the jury that the court is not compelling any particular conclusion. See, e.g., Cruz v. Drezek, 175 Conn. 230
(1978); see also § 52-223 of the General Statutes and § 16-17 of the Practice Book. See also Gillette v. Schroeder, 133 Conn. 682,686 (1947). The plaintiff also assigns error in my not asking the jury why they did what they did and to ask the jury to resolve any potential ambiguity. For reasons stated above, I do not believe there was an inherent ambiguity, and I do not see the need in this case for the court to ask questions of the jury.
The post-trial motions are denied.
Beach, J.