[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE POST TRIAL MOTIONS
This case was tried to a jury, which rendered a verdict on July 25, 2002 in favor of the plaintiff in the amount of $6,940 in economic damages. The plaintiff moves for an additur or in the alternative to set aside the verdict. In this case, the defendant admitted liability for the motor vehicle collision. As plaintiff correctly notes, the only issues for the jury were whether the accident caused the plaintiffs claimed injuries, whether the medical treatment was both necessary and causally related to the accident, and whether the lost wage claim had been proven. The plaintiff claims that no reasonable juror could have awarded less than all of the plaintiffs economic damages in view of the fact that the damage claims were both uncontroverted and supported by substantial evidence.
The plaintiff seeks an additur of $2,350 for the claimed additional economic damages and an unspecified sum for non-economic damages for pain and suffering, loss of enjoyment of life and a 5% permanent impairment to the neck. In the alternative, the plaintiff requests that a new trial be ordered and that the jury's verdict be set aside. For the reasons set forth in detail below, the court denies the motion. In addition, the court heard argument concerning application of the collateral source rule to the recovery in this case. The court concludes, as set forth below, that the amount of the collateral sources is $2,512.94, which is to be paid prior to any further recovery by the plaintiff.
 I DISCUSSION
A. Additur
Any review of a motion for additur must begin from the recognition that "[l]itigants have a constitutional right to have factual issues resolved by the jury. . . . This right is one obviously immovable limitation on CT Page 13688 the legal discretion of the court to set aside a verdict, since the constitutional right of trial by jury includes the right to have issues of fact as to which there is room for a reasonable difference of opinion among fair-minded men passed upon by the jury and not by the court." (Internal quotation marks omitted.) Gaudio v. Griffin Health Services Corp., 249 Conn. 523, 550-55 1, 733 A.2d 197 (1999); Childs v. Bainer,235 Conn. 107, 112, 663 A.2d 398 (1995).
"The ultimate test which must be applied to the verdict by the trial court is whether the jury's award falls somewhere within the necessarily uncertain limits of just damages or whether the size of the verdict so shocks the sense of justice as to compel the conclusion that the jury were influenced by partiality, prejudice, mistake or corruption." Birgel v. Heintz, 163 Conn. 23, 28, 301 A.2d 249 (1972); see also General Statutes § 52-216a.
Until recently, the well-established rule was that a verdict, which awarded economic damages without non-economic damages, was inadequate as a matter of law. See Johnson v. Franklin, 112 Conn. 228, 152 A. 64
(1930). Our Supreme Court visited that rule in the matter of Childs v. Bainer, supra, 235 Conn. 107, and finally, in its decision in Wichers v. Hatch, 252 Conn. 174, 745 A.2d 789 (2000), eliminated that rule. In its place, the Wichers court articulated a standard, which requires analysis on a case by case basis.
B. Facts
From the testimony, the jury could have found that the plaintiff is presently thirty-two years old and came to the United States from Poland five years ago. He was employed as machine operator prior to and subsequent to the accident. His past medical history was unremarkable and he was in good health prior to the motor vehicle collision on August 1, 1998 in which he suffered injuries. He was stopped at a red light when he was hit by the defendant's car from the rear. He experienced a sharp pain in the back of his neck at the time, but did not immediately seek any medical treatment or go to the hospital when the ambulance arrived. There was minimal property damage to the vehicles involved.
After the accident, his neck stiffened and he sought medical treatment at New Britain General Hospital. He was given a cervical collar, prescribed pain killers and directed to see his own physician, which he did some days later. He was unable to work for a period of days. Over the next several weeks, the plaintiff continued to seek medical and chiropractic treatment, which helped him feel better. During the first few months, his pain was primarily in the neck with stiffness and CT Page 13689 headaches and then some months later his lower back began to trouble him.
There was a significant gap in Mr. Brodzik's treatment from September 18, 1998, about six weeks after the accident to June 1, 1999. He did not seek any medical attention during this period of time as he used natural treatments as well as acupuncture to resolve his symptoms. He stopped those treatments, which helped him feel better, because as he testified "I got bored with them." From this, the jury could reasonably have concluded that the medical bills for treatment in 1999 and subsequent years were either not medically necessary, given the relief the natural treatments and exercise had provided, or not causally related to the accident. A conclusion to award less than the full economic damages claimed is fully supported by the gaps in the plaintiffs medical treatment and the reasons given for terminating a form of treatment which had been beneficial to him and provided full relief.
As noted in Gaudio v. Griffin Health Services Corp., supra,249 Conn. 550-551, there were in this case "issues of fact as to which there is room for a reasonable difference of opinion among fair-minded men . . ." And it is precisely such issues which are to be "passed upon by the jury and not by the court." The jury's conclusion not to award all of the economic damages claimed is supported by the evidence in this case. The court therefore declines to award an additur.
C. Motion to set aside the verdict
"When considering a motion to set aside the verdict, this court's function is to determine whether the evidence, viewed in the light most favorable to the prevailing party, reasonably supports the jury's verdict." (Internal quotation marks omitted.) Skrypiec v. Noonan,228 Conn. 1, 10, 633 A.2d 716 (1993), Preston v. Wellspeak,62 Conn. App. 77, 81, 767 A.2d 1259 (2001). Based on the facts reviewed above, the court finds the evidence presented reasonably supports the jury's verdict. The court declines to set aside the verdict and order a new trial.
D. Collateral Sources and the ERISA Lien
The plaintiff's medical insurance, as supplied through his employer, is a self-funded "ERISA" plan, which specifically provides subrogation rights to the insurer and a right of recovery from any proceeds of any settlement or judgment "by or on behalf of the insured." The plan administrator has asserted a lien for payments made for medical care in the amount of $2,512.94.[1] Plaintiff argues, relying on Great West CT Page 13690 Life Annuity insurance Co. v. Knudson, 534 U.S. 204 (2002), that insurers are precluded from collecting sums and enforcing liens under ERISA. He claims he is entitled to the full amount of the medical bills of $5,790.95. In addition to seeking enforcement of the lien, the defendant counters and also claims the plaintiff should not be entitled to any more than the capitated costs, that is those costs the medical providers actually charged, after writing off a portion of the full amount billed.
The United States Supreme Court, in Great Western v. Knudson, however, did not hold that a lien to recover medical benefits paid pursuant to an ERISA (Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et. seq.) plan is unenforceable by an insurer. It held that, where an insurer was suing in federal court pursuant to the Act and was neither seeking injunctive or equitable relief as authorized by the Act, the action would not lie. In Great Western, the parties had settled their case, which settlement was approved in the state court in which the case was brought. In the approved settlement, certain funds were ordered distributed to a special needs trust and certain funds disbursed to counsel for the parties for payment of counsel Fees and for past paid medical expenses in the approximate amount of $13,000 to the insurer. The insurer chose not to cash the check sent to it for payment of those bills, but instead attempted to remove the case to federal court. It sued in federal court to collect significantly more funds than had been found to be the past paid medical expenses by the state court.
Great Western turned upon a careful analysis of what was recoverable at equity and at law, with the court concluding that the expenses in question were not equitable in nature. It implied in its discussion that the amount determined by the state court to be due the insurer was appropriate. The plan in question had a subrogation clause similar to the one before the court. See also Harris it Harvard Pilgrim Health Care,208 F.3d 274 (1st Cir. 2000), approving a lien against a personal injury recovery for medical expenses paid pursuant to an ERISA plan with similar subrogation language. In the context of collateral sources and a worker's compensation recovery, a Connecticut Superior Court case permitted such a lien. Zimnoch v. CT Natural Gas, Superior Court, judicial district of Hartford-New Britain at Hartford, 1997 Ct Sup 5325, Docket No. CV 96056067 (May 8, 1997, Hale, J.) For the foregoing reasons, the court approves the lien asserted in the amount of $2,512.94 and orders it be paid from the judgment. The court further does not reduce the amounts for "capitated costs."
The court directs the plaintiff to file a bill of costs consistent with this decision for its review. CT Page 13691
BY THE COURT
 ___________________ BARBARA M. QUINN, Judge