[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE MOTION FOR ADDITUR
I.
This action was commenced by the plaintiff, Audrey Hatcher, wherein in her one-count complaint dated April 17, 2001 she alleges that she was injured as the result of the negligence of Ramada Plaza Hotel Conference Center. The occurrence took place on August 14, 1999 when the plaintiff, who was a guest at the Ramada Inn slipped and fell in the elevator waiting area. The plaintiff alleges that the area had just been mopped and was wet. Also alleged is that there were no "wet floor" signs posted or other warnings. The plaintiff claims that the occurrence caused her injuries some of which are permanent in nature.
A jury trial was held and on November 26, 2002, the jury returned a verdict for the plaintiff in the amount of $2,680. The jury found that the plaintiff should be awarded $2,350 as economic damages and $1,000 as non-economic damages and found the plaintiff to be 20% negligent. The award of $2,350 for economic damages was substantially what the plaintiff had submitted into evidence.
On December 3, 2002, the plaintiff filed a Motion for Additur. The plaintiff argues that non-economic damages of $1,000 is, on its face inadequate.
In its Motion for Additur, the plaintiff has included the following testimony of Dr. Strugar:
 Upon examination by Dr. Strugar, she had a good range of motion of her neck (T. p 09, 1.04), some mild bilateral intrinsic hand atrophy (T. p 09, 1.04), and three plus reflexes (T. p 09, 1.09).
 It was found that she had a disc herniation in her cervical spine (T. 10, 1.10), between the fifth and sixth vertebra (T. 10, 1.12). Most of the symptoms can be accounted for by that finding (T. 11, 1.03). The CT Page 1654 hyperreflexia (T. 10, 1.04) and some of her atrophy in her hand (T. 10, 1.13).
 These discs can herniate some more, so there is more disc material inside the disc space itself that can then herniate out in to the canal and impinge upon the spinal cord. If that happens, of course, then that would compress the spinal cord and she could develop weakness or even paralysis, depending on how quickly and how much that disc herniates out (T. 13, 1.08).
 In terms of permanent partial disability in connection with the disc, by aim and criteria, she would have a disc with radiculopathy, so the neck pain itself would be 11 percent (T. 14, 1.24). If there's a myelopathy involved, it's probably about 25 percent. So that would be — of course she's got a very mild myelopathy, very mild, so it's a — by aim and criteria, it's about 25 percent (T. 15, 1.02).
 There are two significant findings from the Manchester Hospital emergency room report relative to the causation of the herniated disc. First, the right forehead bruise . . . would imply an extension injury of her neck . . . it's possible to injure the neck in such a way that it might cause a disc to be injured (T. 15, 1.16). Second, they found that she had no hyperreflexia at that particular time, which indicates that perhaps she was not at all myelopathic, or at least there was no sign of any of that. Whereas on my later exams, there was some slight degree of hyperreflexia (T. 15, 1.22).
 What is known is that discs can occur — herniated discs can occur as a result of trauma (T. 17, 1.09) . . . trauma can certainly cause them and it certainly can cause a disc that is perhaps somewhat degenerated or weakened over time. And it can certainly cause it to herniated out (T. 17, 1.13) . . . it is probable that this accident caused her disc herniation (T. 17, 1.19).
 The patient fell. She sustained what appears to be hyperextension injury to her forehead here, like this. And she then presented with symptoms afterwards (T. 56, 1.05). There is an emergency room record there that she did have some complaints, as well, a few days later. According to her, the symptoms started right afterwards. It's unusual for diabetic neuropathy or arthritic symptoms to start immediately after an accident (T. 56, 1.10).
 So those things point that there was an event relating to her cervical spine. And now we see a very prominent disc in a spine that is not terribly degenerated, and it's a focal disc, so it is probable that CT Page 1655 it, this disc, that it did occur as a result of the fall (T. 56, 1.16).
Implicit in plaintiff's position is that given the plaintiff's injuries, the permanency rating as well as the plaintiff's life expectancy, the award of $1,000 for non-economic damages is inadequate.
 II
The Supreme Court of Connecticut held that when ruling on a motion foradditur these things are to be considered. "We have previously explored the parameters of a trial court's discretion in ruling on a motion foradditur. We have considered whether: (1) the jury award `shocks the conscience'; . . . (2) the plaintiff, who has proved substantial injuries, is awarded inadequate damages; . . . and (3) the verdict is `inherently ambiguous.'" Childs v. Bainer, supra, 235 Conn. 114-15.
For the reasons stated by the plaintiff and based on the credible evidence presented at trial, the court finds the award of $1,000 in non-economic damages to be so manifestly inadequate that it shocks the sense of justice of the court. The plaintiff's Motion for Additur is therefore granted.
In support of its finding the court notes that the jury in awarding the plaintiff economic damages of $2,350 awarded the plaintiff substantially the amount of economic damages claimed. This raises a reasonable conclusion that the jury found that the plaintiff's claimed injuries were caused by the negligence of the defendant.
The testimony adduced at trial was that the plaintiff is 64 years of age with a life expectancy of 19.5 years. She complains of ongoing headaches, pain in her hands, knees and shoulders. She claimed that she has headaches three-four times a week. Also that she wakes up during the night with pain. The plaintiff also testified that she cannot write, sew or shop as she did before the incident.
Given the plaintiff's age, permanency of the injuries she suffered and her life expectancy, the $1,000 award for non-economic damages is plainly inadequate.
For the reasons stated the court grants the plaintiff's Motion for Additur and awards an additur of $4,000 for non-economic damages.
The result would therefore be damages as follows: economic damages $2,350, non-economic damages $4,000 which totals $6,350 minus 20% for plaintiff's negligence as found by the jury, which accordingly results in damages in the amount of $5,080.
Stengel, J. CT Page 1656
[EDITORS' NOTE: This page is blank.] CT Page 1657